Luisa **PEREZ, et al., Plaintiffs**

v.

**MOUNTAIRE FARMS, INC.,**
**et al., Defendants.**

**Civ. No. AMD 06–121.**

United States District Court,
D. Maryland.

March 9, 2009.

C. Christopher Brown, Jane Reisen Flanagan, Deborah Thompson Eisenberg, Brown Goldstein and Levy LLP, Baltimore, MD, for Plaintiffs.

Arthur M. Brewer, Eric Hemmendinger, Shawe and Rosenthal LLP, Baltimore, MD, James Lester Hughes, James Larry Stine, Michael Joel Sloan, Wimberly Lawson Steckel Weathersby and Schneider, Atlanta, GA, for Defendants.

## MEMORANDUM OPINION and ORDER

ANDRE M. DAVIS, District Judge.

This action arises under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., as amended by the Portal–to–Portal Act, 61 Stat. 86–87, and state law. Plaintiffs are current and former employees of defendants Mountaire Farms, Inc., and Mountaire Farms of Delaware, Inc., who work or worked at one of two Delaware poultry processing plants. Plaintiff Perez has abandoned her individual state law claims. Now before the court are plaintiffs' motion for collective action, filed pursuant to § 216(b) of the FLSA, and defendants' motion for summary judgment. The motions have been fully briefed and a hearing is not needed. For the reasons stated within, I shall grant plaintiffs' motion for collective action and deny without prejudice defendants' motion for summary judgment.

## I.

The facts, as always under Fed.R.Civ.P. 56, are assessed in the light most favorable to the non-movants, here plaintiffs. Defendants are Delaware corporations engaged in the slaughter, processing, and distribution of chicken throughout the United States. Plaintiffs are current and former employees at defendants' Millsboro, Delaware, chicken processing facility. The Millsboro plant consists of several departments: Receiving, Pinning, Evisceration, Rehang, Giblets, Packing, Cutup, Cone Debone, Tray Pack, Marination, WPL, Dry Cooler, MSC, PAWS, Sam's Club, Leg Debone, and Shipping. As is customary in the chicken processing industry, employees in each department are paid based on "line time," which begins at a predetermined time for each department. "Line time" begins when the first chicken arrives at the first employee's individual work station in each department. "Line time" ends when the last chicken is processed at the last employee's individual work station in each department. Each employee is required to be present at his work station when the first chicken arrives at his individual work station and until the last chicken leaves his individual work station.

Employees swipe individual time cards into an electronic time clock each day when they arrive for work. The time measured by the time clock, called KRONOS time, does not affect an employee's pay, however, because the employee is paid according to "line time." If an employee arrives late to his work station, then the supervisor will prepare a report showing the actual time that the employee arrived at his work location.

Employees are required to don certain safety and sanitary equipment before taking their place on the production line in order to comply with United States Department of Agriculture ("USDA") sanitary regulations, Occupational Safety and Health Administration ("OSHA") safety regulations, as well as defendants' own corporate policies. For example, all employees are required to wear ear plugs, bump caps, lab coats, hair/beard nets, and steel-toed rubber boots. Some employees may also be required to wear one or more of the following items: nitrile/latex/rubber gloves, aprons, safety glasses, cut resistant gloves, chain gloves and sleeves. Almost all employees wear ear plugs, bump caps, lab coats, hair/beard nets, steel-toed rubber boots, nitrile/latex/rubber gloves. An employee's ensemble, which consists of a

combination of those items listed, constitutes the employee's personal protective equipment ("PPE").

Employees are responsible for sanitizing their PPE before their shifts, during their breaks, and after their shifts. Upon entering the production area, employees walk through a foot bath, dip their gloves in a sanitizing solution, splash the sanitizing solution on their aprons, and continue walking to their work stations. Receiving employees do not wash or disinfect their gloves at the beginning of the shift.

Prior to January 16, 2006, the date on which this action was filed, Millsboro meal breaks lasted thirty minutes. On and after this date, meal breaks were extended to thirty-six minutes. Employees leave for their meal breaks when the last chicken passes their individual work stations. Employees clean and doff their aprons and gloves and proceed to the cafeteria. Most employees, however, continue to wear the other items while eating.

Between October 4, 2004, and July 9, 2006, employees were permitted to take home hairnets, earplugs, bump caps, cotton or rubber gloves, boots and aprons. Employees thus had the option to don these items at home or at work. Beginning on July 10, 2006, employees were also permitted to take home lab coats (sometimes referred to as "smocks").

## II.

Plaintiffs move for collective action pursuant to § 216(b) of the FLSA, which provides that "an action may be maintained against any employer ... on behalf of himself and other employees similarly situated." 29 U.S.C. § 216(b). Approximately 280 current and former Millsboro chicken-processing workers have opted-in to this action. Originally, defendants opposed plaintiffs' motion but on significantly limited bases. The parties have reviewed the record as to certain employees and

plaintiffs conceded that several plaintiffs are ineligible to opt-in and have agreed to dismiss them from the case. In all other respects, defendants have withdrawn their opposition to collective action treatment. I agree that the remaining plaintiffs meet the "similarly situated" requirement for collective action. *Jackson v. New York Telephone Co.,* 163 F.R.D. 429, 431 (S.D.N.Y.1995); *see also Thiessen v. General Electric Capital Corp.,* 267 F.3d 1095, 1103 (10th Cir.2001). Accordingly, the motion for collective action shall be granted.

## III.

Summary judgment shall be granted where the moving party demonstrates that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if there exists sufficient evidence such that a reasonable jury could return a verdict for the nonmoving party. *Id.* The moving party bears the burden of identifying which portions of the pleadings, exhibits, and discovery materials demonstrate that there is no genuine issue of material fact. *Celotex Corp.,* 477 U.S. 317, 323, 106 S.Ct. 2548 (1986). The court views the factual evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Once the moving party has met its burden, the nonmoving party must then "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere allegations or denials are insufficient. *Id.*

## IV.

In a Memorandum and Order filed on June 8, 2008, I considered in this case the issue, closely related to the issues presented here, "whether 29 U.S.C. § 203(*o* ) relieves the defendants from any obligation to pay wages to the plaintiff-employees for the time the latter expend in 'donning and doffing' certain safety and protective apparel incident to their work." *See* 2008 WL 2389798, *1 (D.Md., June 10, 2008). I concluded, relying on the reasoning of *Alvarez v. IBP, Inc.,* 339 F.3d 894, 904–05 (9th Cir.2003), *aff'd on other grounds,* 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005), and rejecting a contrary approach employed by the Eleventh Circuit, that donning and doffing such items did not constitute non-compensable "changing clothes" within the meaning of § 203(*o* ).[1] With the present motion, defendants seek a ruling that, as a matter of law, even if the disputed donning and doffing does not constitute non-compensable "changing clothes," the record, viewed in the light most favorable to plaintiffs, compels the court to enter judgment in favor of defendants. As explained below, however, I reject the contention that this case can be resolved on summary judgment. Accordingly, the trial, now calendared to commence on March 23, 2009, shall proceed as scheduled.

## A.

The FLSA was enacted "to protect employees from detrimental labor conditions and provide for the general well being of workers." *Monahan v. County of Chesterfield,* 95 F.3d 1263, 1267 (4th Cir.1996). The goal is to provide employees with "a fair day's pay for a fair day's work." *Id.; Alvarez,* 339 F.3d at 902. The Supreme Court has said "work" is the "physical or mental exertion (whether burdensome or not) controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer." *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123,* 321 U.S. 590, 598, 64 S.Ct. 698, 88 L.Ed. 949 (1944).

In 1947, Congress passed the Portal–to–Portal Act, which narrowed the scope of *compensable* "work." Specifically, the Portal–to–Portal Act, *inter alia,* denies compensation for the following employee activities:

> walking, riding, or traveling to and from the actual place of performance of the principal activity or activities which such employee is employed to perform, and activities which are *preliminary to or postliminary* to said principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities.

29 U.S.C. § 254(a) (emphasis added). The Supreme Court has emphasized that FLSA exemptions "are to be narrowly construed against the employers seeking to assert them and their application limited to those establishments plainly and unmistakably within their terms and spirit." *Arnold v. Ben Kanowsky Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 4 L.Ed.2d 393 (1960).

---

1. In *Sepulveda v. Allen Family Foods, Inc.,* No. MJG 07–97 (D.Md., Sept. 16, 2008), my colleague Judge Garbis reached a contrary conclusion in a poultry processing case virtually identical to this case. *See id.,* Slip Op. at 6–7("In the current decisional landscape, the Court finds it appropriate to follow the Eleventh Circuit [rather than the Ninth Circuit] until the matter is addressed by the United States Court of Appeals for the Fourth Circuit so as to avoid the substantial possibility of unnecessary trial proceedings."), *app. pending,* No. 08–2256, 4th Cir.

Shortly after Congress passed the Portal–to–Portal Act, the Department of Labor promulgated a regulation defining "workday" as "the period between the commencement and completion on the same workday of an employee's principal activity or activities." 29 C.F.R. § 790.6(a), (b). Therefore, "to the extent that activities engaged in by an employee occurs after the employee commences to perform the first principal activity on a particular workday and before he ceases the performance of the last principal activity on a particular workday," those activities are not excluded from FLSA coverage by the Portal–to–Portal Act. *Id.* This means that activities such as donning, doffing, and walking (among others) are compensable as long as they occur after the workday has begun under what is known as the "continuous workday rule," *see IBP, Inc. v. Alvarez,* 546 U.S. 21, 28–29, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005), subject to one or more exclusions or exemptions. To summarize, then, in order to prevail on a donning and doffing FLSA claim, a plaintiff must prove that (1) the activity of donning and doffing is "work" and (2) donning and doffing is not a pre- or postliminary activity under the Portal–to–Portal Act. *See Tenn. Coal,* 321 U.S. at 598, 64 S.Ct. 698; *Alvarez,* 339 F.3d at 902–03.

Less than a decade after the passage of the Portal–to–Portal Act, the Supreme Court held that activities that are "integral and indispensable" to principal activities are themselves principal activities—not pre- or postliminary—and are therefore compensable under the FLSA. *Steiner v. Mitchell,* 350 U.S. 247, 256, 76 S.Ct. 330, 100 L.Ed. 267 (1956) ("activities performed either before or after the regular work shift, on or off the production line, are compensable . . . if those activities are an integral and indispensable part of the principal activities"). In *Steiner,* employees at a battery plant were required to don protective work clothing at the beginning of

the productive work period, then shower and change back to their street clothing at the end of that period. *Id.* at 251, 76 S.Ct. 330. Notably, the work clothes being donned and doffed in *Steiner* were not unique or special to battery manufacturing. The clothes were simply "old but clean work clothes." *Id.* The employers provided work clothes to the employees because "[t]he cost of providing their own work clothing would be prohibitive for the employees, since the [battery] acid causes such rapid deterioration that the clothes sometimes last only a few days." *Id.* The Court stated that "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees." *Id.* at 256, 76 S.Ct. 330. Thus, the Court held that employees should be compensated for time spent donning and doffing their work clothes. *Id.*

In applying the teachings of *Steiner,* courts have disagreed as to which types of donning and doffing are "integral and indispensable." The Fourth Circuit has not spoken directly on this issue.

The Ninth Circuit has developed a two part test: donning and doffing of unique and non-unique protective gear are "integral and indispensable" if doing so is (1) necessary to the principal work performed and (2) done for the benefit of the employer. *Alvarez,* 339 F.3d at 902–03. In *Alvarez,* employees at a Pasco, Washington, meat processing plant were required to wear protective gear, all of which must be donned at the start of a shift:

> all employees must wear some form of a plastic hardhat, a hair net, and ear plugs, and all employees—save "gutter" employees in the slaughter division— must wear a face shield or safety goggles; all employees wear some sort of

glove, with most processing employees using a number of sets per day of grip-facilitative and warmth-providing "yellow cotton gloves," and with some slaughter employees donning these yellow gloves and/or plastic or rubber gloves for enhanced grip and protection against blood and water saturation; all employees wear liquid-repelling sleeves, aprons, and leggings; all employees wear safety boots/shoes, all of which must be wiped/hosed after the end of a shift; and many employees opt to wear weight-lifting-type belts to prevent back injury. In addition, so-called "knife users" don an assortment of protective gear on their hands, arms, legs, and torsos; this gear often constitutes chain-link (i.e., "mesh") metal aprons, leggings, vests, sleeves, and gloves, and plexiglass arm guards, Kevlar gloves (that is, "can't cut" or "Polar" gloves), and puncture-resistant protective sleeves.

*Id.* at 898, n. 2.

The court first held that donning and doffing this protective gear was considered "work" because it is "pursued necessarily and primarily for the benefit of the employer." *Id.* at 902, *quoting Tenn. Coal,* 321 U.S. at 598, 64 S.Ct. 698. Next, the court unequivocally ruled that such donning and doffing was "integral and indispensable" to the principal activity of meat processing. *Id.* at 903. Donning and doffing was necessary to the principal work performed because employees were required to do so by law, *see* 9 C.F.R. § 308.3; 29 C.F.R. § 1910.132(a), by internal company rules, and by the nature of the work. *Id.* The court emphasized, "it is beyond cavil that the donning, doffing, washing, and retrieving protective gear is, at both broad and basic levels, done for the benefit of [the employer]. These plaintiff-performed activities allow [the employer] to satisfy its requirements under the law and these activities prevent unnecessary

workplace injury and contamination, both of which would inevitably impede [the employer's] process." *Id.* (internal citations omitted). Further, the ease of donning the protective gear does not make the act of doing so less "integral or indispensable" under *Steiner. Id.*

The Supreme Court unanimously affirmed the Ninth Circuit insofar as it held that time the employees spent walking to the plant floor after they had donned the protective gear was not excluded by the Portal–to–Portal Act, *IBP, Inc. v. Alvarez,* 546 U.S. 21, 126 S.Ct. 514, 163 L.Ed.2d 288 (2005), although, to be sure, the Court was not asked in that case to address whether donning and doffing certain types of protective gear was compensable. Nevertheless, the opinion was premised on the fact that the Ninth Circuit had already made that determination, and made it correctly. *Id.* at 30, 126 S.Ct. 514 ("The principal question presented by these consolidated cases—both of which involve required protective gear that the courts below found integral and indispensable to the employees' work—is whether postdonning and predoffing walking time is specifically excluded by [the Portal–to–Portal Act]."). Indeed, the parties in *Alvarez* agreed that "in light of *Steiner,* the donning and doffing of protective gear are 'principal activities' under § 4 of the Portal–to–Portal Act." *Id.* at 32, 126 S.Ct. 514.

Even before *Alvarez,* the Ninth Circuit had applied the "integral and indispensable" test and found that where company policy and federal law require employees to don and doff certain equipment, the Portal–to–Portal Act does not permit non-compensation. *See Ballaris v. Wacker Siltronic Corp.,* 370 F.3d 901, 911 (9th Cir. 2004); *see also Dunlop v. City Elec., Inc.,* 527 F.2d 394, 401 (5th Cir.1976) (an activity is "integral and indispensable" when it is "necessary to the business" and per-

formed "primarily for the benefit of the employer"); *Spoerle v. Kraft Foods Global, Inc.,* 527 F.Supp.2d 860, 864 (W.D.Wis. 2007) ("Because plaintiffs need to put on the equipment in order to perform their job safely, their doing so is 'an integral and indispensable part' of a 'principal activity.' ").

Some courts have drawn a distinction between the donning and doffing of "generic" items and the donning and doffing of "specialized" or "unique" items. In *Gorman v. The Consolidated Edison Corp.,* the Second Circuit held that the donning and doffing of a helmet, safety glasses, and steel toed boots were not integral to the employees' work because these items were merely "generic" safety items. 488 F.3d 586, 594 (2d Cir.2007). The district court followed this standard in *Adams v. Norman W. Fries, Inc. d/b/a Claxton Poultry,* holding that the donning and doffing of smocks, rubber boots, hairnets, beard nets, bump caps, ear plugs, rubber gloves, safety glasses, and aprons are noncompensable because such gear are not unique. *See* No. 07 Civ. 0017 (S.D.Ga. Feb. 23, 2009). Similarly, the Tenth Circuit has held that the donning and doffing of standard gear was not compensable because such activity "takes all of a few seconds and requires little or no concentration." *Reich v. IBP, Inc.,* 38 F.3d 1123 (10th Cir.1994).

■■■ As an initial matter, I find the donning and doffing of PPE to be "work" because these activities require physical and mental exertion controlled and required by defendants. *See Tenn. Coal,* 321 U.S. at 598, 64 S.Ct. 698. I am persuaded that reasonable persons could reasonably disagree as to whether, for the plaintiffs here, donning and doffing *all or a part* of the PPE is integral and indispensable to the principal activity of chicken processing. Defendants disparage *Alvarez,* urging the court to follow what they assert is the "commonsense approach" of *Gorman* and *Reich* and similarly-reasoned cases. Defendants argue that the Ninth Circuit's decision in *Alvarez* disregarded both the Portal–to–Portal Act as well as *Steiner.* Defendants also argue that the Supreme Court's decision in *Alvarez* supersedes the Ninth Circuit's holding because of the following language: "the fact that certain preshift activities are necessary for employees to engage in their principal activities does not mean that those preshift activities are 'integral and indispensable' to a 'principal activity' under *Steiner.*" *Alvarez,* 546 U.S. at 40–41, 126 S.Ct. 514. But this language merely leaves open the possibility that certain preshift activities are not "integral and indispensable" and therefore noncompensable. More fundamentally, the quoted excerpt appears in that portion of the Supreme Court's opinion in which it affirmed the First Circuit's holding (in a consolidated case) that predonning waiting time is not compensable. *Id.* There is no issue of waiting time in this case.

In any event, as noted above, the Supreme Court did not visit the issue of whether donning and doffing of certain protective gear was compensable because the Court took as established that the lower courts (both the First and Ninth Circuits) were correct in their conclusions that those activities were, indeed, compensable. *Id.* at 30, 126 S.Ct. 514 ("The principal question presented by these consolidated cases—both of which involve required protective gear that the courts below found integral and indispensable to the employees' work—is whether postdonning and predoffing walking time is specifically excluded by [the Portal–to–Portal Act]."). The Supreme Court, operating under the premise that the donning and doffing involved were "integral and indispensable" (and thus compensable), went one step further to decide whether post-

donning and predoffing walking time (and, in the First Circuit case, waiting time) were likewise compensable under the continuous workday rule. *Id.*

Defendants also rely on *Gorman*'s reading of *Steiner* as permitting compensation only when donning and doffing "is done in a lethal atmosphere." In other words, the Second Circuit relied heavily on the fact that the workplace at issue was a battery plant, where toxic and corrosive substances presented grave risk to the employees. 488 F.3d at 593 ("*Steiner* therefore supports the view that when work is done in a lethal atmosphere, the measures that allow entry and immersion into the destructive element may be integral to all work done there, just as a diver's donning of wetsuit, oxygen tank and mouthpiece may be integral to the work even though it is not the (underwater) task that the employer wishes done."). This reading of *Steiner* is quite narrow, especially given the facts of the case and in light of *Alvarez.* As previously stated, the work clothes at issue in *Steiner* were simply "old but clean work clothes." *Steiner,* 350 U.S. at 251, 76 S.Ct. 330. These work clothes were not special or unique. They did not help the employees perform their tasks in a better, faster, more efficient, or safer way. They were provided simply because "[t]he cost of providing their own work clothing would be prohibitive for the employees, since the [battery] acid causes such rapid deterioration that the clothes sometimes last only a few days." *Id.* In addition, the *Steiner* Court did not limit its holding to work environments that involved life-threatening risks. The *Steiner* Court simply noted that the facts of the case presented the "clearest" example of an activity that is "integral and indispensable" to the principal activity. *Id.* at 256, 76 S.Ct. 330. The Court also made a distinction between equipment donned as a mere "convenience for the employee" and equipment donned because it is related to the specific work (i.e., required by law and company policy). *Id.* at 258, 76 S.Ct. 330.

Notably, one court has criticized the *Gorman* approach for limiting compensation for donning and doffing when the "work is done in a lethal atmosphere." *See Spoerle,* 527 F.Supp.2d 860, 864–65 ("From a public policy perspective, this reading is obviously troubling because it creates an uncomfortable distinction between hazards that kill and hazards that maim (or pose only a *risk* of death) and suggests that an employee is entitled to compensation for protecting herself from the former only.").

The *Gorman* court also emphasized that donning "generic" safety equipment like helmets, safety glasses, and steel-toed boots was "relatively effortless" and therefore, noncompensable. *Gorman,* 488 F.3d at 594. The Tenth Circuit had used the same reasoning in *Reich.* This reasoning may be contrasted with that in *Alvarez,* in which the Ninth Circuit held that the ease of donning the protective gear does not make the act of doing so less "integral or indispensable" under *Steiner, Alvarez,* 339 F.3d at 903, although the *Alvarez* court did approve the district court's application of the *de minimis* doctrine in excluding from compensable work the donning and doffing of certain item, e.g., hard hats. In any event, *Reich* was decided before the Supreme Court affirmed *Alvarez,* so its persuasiveness is not compelling. In fact, since the Supreme Court's affirmance in *Alvarez,* at least one district court in the Tenth Circuit has declined to follow *Reich,* based on the belief that the Tenth Circuit was likely to modify its approach in light of *Alvarez. See Garcia v. Tyson Foods, Inc.,* 474 F.Supp.2d 1240 (2007) ("The court is convinced that the Circuit, if given the opportunity to revisit the issues in *Reich,* would approach its analysis of the pertinent issues differently in light of *Alvarez.*").

In the final analysis, I decline defendants' invitation to ignore, or to read narrowly *Alvarez*. Instead, I find much to commend the *Alvarez* two part test: donning and doffing of unique and non-unique protective gear are "integral and indispensable" if doing so is (1) necessary to the principal work performed and (2) done for the benefit of the employer. *See Alvarez*, 339 F.3d at 902–03.

Whether donning and doffing the PPE at issue in this case is necessary to the principal work of chicken processing is properly an issue for me to determine at trial. I note that all Mountaire employees are required to don and doff ear plugs, bump caps, lab coats, hair/beard nets, and steel toed rubber boots. Some employees are required to wear nitrile/latex/rubber gloves, aprons, safety glasses, cut resistant gloves, chain gloves and/or sleeves. Almost all employees wear ear plugs, bump caps, lab coats, hair/beard nets, steel toed rubber boots, nitrile/latex/rubber gloves. Donning and doffing many or most, if not all, of these items could well be determined at trial to be integral and indispensable to chicken processing if doing so is required by defendants' own internal rules as well as federal law. *Cf. Alvarez*, 339 F.3d at 903; *Ballaris*, 370 F.3d at 911; *Dunlop*, 527 F.2d at 401; *Spoerle*, 527 F.Supp 2d at 864. It is undisputed that Mountaire company policy, USDA's sanitary regulations, and OSHA's safety regulations require the Plaintiff-employees to don and doff most if not all of this equipment. Wearing most if not all of the PPE is not done "merely for the convenience of the employee." *See Steiner*, 350 U.S. at 258, 76 S.Ct. 330.[2]

**2.** Defendants apparently argue that the disputed donning and doffing is not "integral and indispensable" and thus not compensable because employees are not required to be present at the Millsboro plant at a specific time to don their PPE. This contention does not support an award of summary judgment. Each employee is required to be dressed in their PPE and present at his respective work station at the start of line time. In order for this to happen, employees necessarily have to arrive well in advance of the start of line time in order to pick up and don clean PPE.

Moreover, the fact that, from October 4, 2004 to July 9, 2006, employees were allowed to take home some of the PPE items, or that, since July 2006, employees were allowed to take home smocks, does not compel judgment in favor of defendants. In May 2006, the Department of Labor issued an advisory opinion stating that "if employees have the option and ability to change into the required gear at home, changing into the gear is not a principal activity, even when it takes place at the plant." DOL Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006). A district court followed this memorandum in *Abbe v. City of San Diego* and granted the city's motion for summary judgment because it could find "no evidence that its officers were required by law, policy, or the nature of their work to don and doff their uniform or safety equipment at

work." 2007 WL 4146696 *7 (S.D.Cal. Nov. 9, 2007). On the other hand, another district court concluded that donning and doffing may be compensable even if performed off the employer's premises because "the location of the donning and doffing activity [should] be only one of the considerations" in determining if an activity is compensable. *Lemmon v. City of San Leandro*, 538 F.Supp.2d 1200, 1207 (N.D.Cal.2007). The instant case differs from *Abbe* in that Mountaire is required by law, policy, and the nature of the work to make the PPE available at work. Moreover, at least one court has denied summary judgment on this same issue because, although the city formally permitted its officers to change at home, the record was unclear whether the officers "actually [had] a meaningful opportunity to don their protective gear at home, or instead, whether that option [was] illusory." *Martin v. City of Richmond*, 504 F.Supp.2d 766, 775 (N.D.Cal.2007).

Here, defendants' own actions undermine the "take home" option and may render it "illusory." Defendants recently expanded the number of employee lockers. Any employee who wants a locker is provided with one. Zlotorzynski 30(b)(6) Dep. at 84–85, Apr. 19, 2007. If changing at home were a bona fide option, there would be no real need for employee lockers, and defendants would not likely incur the costs for doing so. Furthermore,

As to the second *Alvarez* prong, the donning and doffing of the PPE seems clearly to be done "necessarily and primarily" for the benefit of the Defendants. *See Tenn. Coal,* 321 U.S. at 598, 64 S.Ct. 698. The Ninth Circuit has flatly stated that donning and doffing protective gear is done "necessarily and primarily" for the employer's benefit in the context of meat processing. *Alvarez,* 339 F.3d at 903. ("It is beyond cavil that the donning, doffing, washing, and retrieving of protective gear is, at both broad and basic levels, done for the benefit of IBP.") The Ninth Circuit followed the same reasoning in *Ballaris,* holding that donning and doffing uniforms at a silicon chip manufacturing plant was done primarily for the benefit of the employer because the uniforms "were required to limit potential cleanroom contamination, and thereby to assist the employer is ensuring the quality of the silicon chips manufactured at the plant." *Ballaris,* 370 F.3d at 911.

A district court in Tennessee recently confronted a similar case, weighed the benefits of donning and doffing protective gear to the employers vis-à-vis the benefits to the employees as follows:

> Ray Barrientos, an employee in the evisceration department, testified that employees did not take lab coats home due to the risk of bacterial contamination. Barrientos Dep. Tr. at 10, 19–20 & 36–37, Sept. 18, 2007 ("They've told us we cannot take the smock home, because we could introduce some type of bacteria there."); Perez Lopez Dep. Tr. at 10 & 46–49, Sept. 18, 2007 (Supervisors told employees that "there was a lot of contamination happening to the chickens, to the food, and that because of this contamination, we couldn't be taking the smocks home.").
>
> Importantly, the record shows that the order of donning is crucial to this "take home" issue. Normally the lab coat goes on first, followed by the apron, the arm sleeves, and gloves. Irwin 30(b)(6) Dep. Tr. at 11, April 18, 2007; Zlotorzynski 30(b)(6) Dep. at 39–40. The lab coat is therefore the foundation of the PPE. It must be in place before other

The fact is that the frocks enable the defendants to maintain the cleanliness of their facilities and prevent their product from becoming contaminated. This benefit is enormous when one considers the damage that would result to the defendants if they were to sell a contaminated food product. This minor benefit to the employees of keeping their clothes clean pales by comparison. As such, there is no question that, as a matter of law, it is the defendants who reap not only *some* benefit from the donning and doffing of the frocks, but the *primary* benefit of doing so.

*Jordan et al. v. IBP, Inc.,* 542 F.Supp.2d 790, 807 (M.D.Tenn.2008). I find this analysis persuasive and applicable to the instant case. Here, donning the PPE benefits the Plaintiff-employees inasmuch as the PPE (1) prevents accidental workplace injury and other hazards that flow from chicken processing and (2) allows employees to maintain clean clothes.

Defendants are likewise benefitted by the employees' donning and doffing PPE. First, defendants are able to meet the sanitary and safety requirements of feder-

> gear can be donned. Complete donning for work, therefore, cannot be achieved until the lab coat is donned. Most employees take the option of doffing and turning in to the company his used lab coat on their way out at the end of the day and picking up a clean one in the morning. *Id.* Defendants admit that it is "not practical" for a worker at the end of the day to wear a dirty lab coat home. *Id.* at 25. Employees therefore doff all of their PPE at the end of the day. And even if employees were taking home clean lab coats, they would still need to report to the Millsboro plant in advance of the start of line time to don the rest of their PPE. Thus, there is a genuine dispute of material fact, and a dispute over the propriety of ultimate inferences, as to whether the first prong of the *Alvarez* test, whether the particular donning and doffing is necessary to the principal work performed, is satisfied in this case.

al law. These requirements include USDA animal products safe handling regulations and OSHA workplace safety regulations. Second, defendants are able to process, manufacture, and sell sanitary and uncontaminated chicken. Finally, Defendants mitigate their liability regarding workplace hazards. These benefits are important, especially in the context of public safety and defendants' potential exposure to civil liability (both as commercial manufacturers and as employers). If defendants do not require employees to wear PPE while they processed chicken on the production line, then they face substantial fines and penalties for violating federal law. In fact, defendants "could not continue to operate its chicken-processing business if it failed to maintain a certain level of cleanliness in compliance with USDA regulations, or if it failed to follow OSHA regulations relating to employee safety." *Fox v. Tyson Foods, Inc.*, 2002 WL 32987224 *9 (N.D.Ala.). In recent months, many manufacturers of meat products have recalled their products due to possible salmonella, listeria or E. coli contamination, costing manufacturers and sellers millions of dollars.[3] Further, the cost of defending and satisfying a judgment in a civil case for placing contaminated meat products in commerce is potentially financially devastating to a manufacturer or seller. *See generally* JEAN C. BUZBY, PAUL D. FRENZEN, AND BARBARA RASCO, PRODUCT LIABILITY AND MICROBIAL FOODBORNE ILLNESS, Agricultural Economic Report No. AER799, 13–23 (April 2001).

While employees reap some benefits from wearing their PPE, the benefits to defendants are significant. As in *Jordan,* defendants "reap not only *some* benefit from the donning and doffing ... but the *primary* benefit of doing so." *Jordan,* 542 F.Supp.2d at 807.

For the reasons set forth, therefore, I am satisfied that the determination of the proper application of the Portal–to–Portal Act to the pre- and post-shift donning and doffing is not appropriate to resolve in this case as a matter of law.

## B.

■ Bona fide meal periods are non-compensable:

bona fide meal periods are not work time ... The employee must be completely relieved from duty for purposes of eating regular meals ... The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating.

29 C.F.R. § 785.19(a) (2009); *see Donovan v. Bel–Loc Diner, Inc.,* 780 F.2d 1113, 1115 n. 1 (4th Cir.1985) ("To qualify as a bona fide non-compensable break, the respite must be uninterrupted and at least thirty minutes in duration, and the employee must be completely relieved from duty"). Under Fourth Circuit law, "[t]ime spent predominantly for the employer's benefit during a period, although designated as a lunch period or any other designation, nevertheless constitutes working time compensable under the provisions of the Fair Labor Standards Act." *Roy v. County of Lexington,* 141 F.3d 533, 544–45 (4th Cir.

**3.** The following are two recent high-profile recall cases. In March 2008, Costco Wholesale recalled 10,368 pounds of chicken because of possible Listeria monocytogenes. Amanda Eamich, *Washington Firm Recalls Frozen Chicken Entrées For Possible Listeria Contamination,* US Recall News, March 17, 2008, http://www.usrecallnews.com/2008/03/usda–301.html. In August 2008, Nebraska

Beef, Ltd. recalled approximately 1.36 million pounds of meat that may have been contaminated with *E. coli.* Laura Reiser, *Nebraska Firm Expands Recall of Beef Products Due To Possible* E. Coli *O157:H7 Contamination,* Food Safety and Inspection Service (USDA), Aug. 14, 2008, http://www.fsis.usda.gov/News_&_Events/Recall_029_2008_Expanded/index.asp.

1998) (*quoting F.W. Stock & Sons, Inc. v. Thompson,* 194 F.2d 493, 496 (6th Cir. 1952)).

Whether a meal break is predominantly for the benefit of the employer is a factual determination. *See Beasley v. Hillcrest Med. Ctr.,* 78 Fed.Appx. 67, 70 (10th Cir. 2003); *Bernard v. IBP, Inc.,* 154 F.3d 259, 265 (5th Cir.1998) ("Whether meal time is predominantly for the benefit of the employer is a question of fact that is ordinarily resolved by the trier of fact after hearing all of the evidence.").

■ Here, defendants claim that plaintiffs are not entitled to compensation because they are not the predominant beneficiary of plaintiffs' activities at lunch. Plaintiffs argue that they are entitled to compensation for the time spent donning, doffing, washing, and walking during their meal breaks because defendants not only predominantly benefit from these activities, but they also control these activities. For instance, sanitizing the PPE is mandatory to ensure that the chicken and the production line remain uncontaminated. To be sure, plaintiffs' sanitizing and doffing their PPE before heading to the cafeteria benefits defendants because doing so helps defendants limit their products' exposure to bacteria and ensure that products are uncontaminated and clean. Plaintiffs also benefit from sanitizing and doffing PPE before the meal break—they are able to eat without chicken blood and fat on their person. At the very least, there is sufficient evidence to find that employees at defendants' Millsboro plant are not completely relieved of their duties during their meal break.

The parties also dispute the amount of time required for employees to (1) sanitize and doff their PPE [4] before proceeding to the cafeteria at the beginning of the meal break (2) don their PPE at the end of the meal break. Defendants claim that these activities take less than one minute. Plaintiffs' expert measured the average time required for doffing PPE at the beginning of the lunch break is 2.571 minutes and the average time required for donning PPE at the end of the lunch break is 4.225 minutes. There is a genuine issue of material fact as to whether the activities performed during the meal break predominantly benefit defendants because there is a dispute regarding the amount of time plaintiffs devote to sanitizing and doffing at the beginning of the meal break and donning at the end of the meal break. The question of which party predominantly benefits is a question of fact and an not proper for summary judgment.

## C.

■ "[D]uring a continuous workday, any walking time that occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity is excluded from the scope of that provision, and as a result is covered by FLSA." *Alvarez,* 546 U.S. at 37, 126 S.Ct. 514. The Department of Labor has recognized this view: "*Alvarez* thus clearly stands for the proposition that where the aggregate time spent donning, walking, waiting and doffing exceeds the *de minimis* standard, it is compensable." DOL Advisory Letter, p. 4 (May 2006). If at the trial of this action the initial donning at the beginning of the day were found "integral and indispensable" to chicken processing, that action is itself a principal activity and marks the beginning of the continuous work day. *See Alvarez,* 546 U.S. at 33, 126 S.Ct. 514. Similarly, the doffing at the end of the day would be a principal activity marking the end of the continuous work day. Any activity that

---

4. According to defendants, employees doff ear plugs, aprons, and gloves (rubber and cotton) before proceeding to the cafeteria. Defendants' Statement of Facts at 3.

occurs between the initial donning and final doffing (e.g., walking, sanitizing, picking up tools, etc.) would also be compensable. Thus, the amount of compensable walking time, if any, is a question of fact that will be determined at trial.

### D.

■ Defendants argue broadly that, even if the donning, doffing, sanitizing and walking were considered work and "integral and indispensable" to chicken processing, such activities are nevertheless noncompensable because the time required to perform them is so minuscule as to be *de minimis.* "As a general rule, employees cannot recover for otherwise compensable time if it is *de minimis.*" *Lindow v. United States,* 738 F.2d 1057, 1061–62 (9th Cir.1984). In fact,

> When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded. Split-second absurdities are not justified by the actualities of working conditions or by the policy of the Fair Labor Standards Act. It is only when an employee is required to give up a substantial measure of his time and effort that compensable working time is involved.

*Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 692, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946).

■ As the Supreme Court noted in *Mt. Clemens Pottery,* the precise amount of time that may be considered *de minimis* is ultimately question for the trier of fact. *Id. Lindow v. United States,* the most cited case on this issue, weighs three factors in determining whether a claim is too small for recovery: (1) the practical administrative difficulty in recording the time; (2) the size of the aggregate claim; and (3) the regularity of the additional work. 738 F.2d at 1063. As to the first factor, defendants' expert, Dr. Jerry Davis, has shown that measuring the time donning, doffing, washing, and walking is possible. As to the second factor, the size of the aggregate claim is quite large. Approximately 280 Millsboro employees have opted into this case. These employees were paid at a rate of $10 per hour. Their claims go back to 2003 and continue to the present. For one year alone (at a loss of 15 minutes per day), an employee would be entitled to $625 in damages. If doubled by the appropriate FLSA penalty, each employee would be entitled to $1250 annually. The annual loss for 280 workers would be about $350,000. Finally, as to the third prong, the unpaid work was regular and repeated itself daily. Thus, under *Lindow*'s three factors, in view of the record as a whole, it is clear that this issue is not properly decided as a matter of law.

Some courts have suggested that an activity is *de minimis* if it does not exceed 10 minutes.[5] *See Spoerle,* 527 F.Supp.2d at 868; *Reich,* 38 F.3d at 1126. The parties have presented contradictory expert testimony as to the amount of time actually required to don, doff, and sanitize PPE and walk around the Millsboro facility. Dr. Davis has stated that the daily time workers are not compensated for donning, doffing and walking is 10.2 minutes.[6] De-

**5.** Defendants assert that the Fourth Circuit adopted a bright-line 10–minute *de minimis* rule in *Green v. Planters Nut & Chocolate Co.,* 177 F.2d 187, 188 (4th Cir.1949). This is simply not the case. In *Planters Nut,* the Fourth Circuit simply held that where the employer required employees to be present at their work stations 10 minutes before starting time, the 10 minutes would not be so negligible that employees would not be entitled to compensation under the FLSA. *Id. Planters Nut* does not establish a *per se* 10–minute *de minimis* rule.

**6.** Dr. Davis's report states that the average employee spends 3.3 minutes per shift don-

fendants' Ex. B at 7 and Ex. C at 5. Dr. Robert Radwin, plaintiffs' expert, measures the average time donning, doffing, walking and sanitizing to be 20 minutes. Plaintiffs' Ex. 2 at 9. No court has actually explained why 10 minutes should be the benchmark for *de minimis* purposes. *See Spoerle*, 527 F.Supp.2d at 868 ("no court has explained why 10 minutes of work is worthy of compensation but 9 minutes and 59 seconds is not"). Even if this court were to accept the 10 minute rule, however, plaintiffs have presented sufficient evidence to contradict defendants. In short, this court need not engage in any fact-finding on this issue at the moment. The record is clear that plaintiffs have submitted sufficient evidence to survive summary judgment as to whether the time spent by plaintiffs on compensable activities is *de minimis*.

## V.

For the reasons set forth above, it is this 9th day of March, 2009, ORDERED that plaintiff's motion for collective action is GRANTED and defendants' motion for summary judgment is DENIED.

ning and doffing the required PPE. Defendants' Ex. B at 7. In a separate report, Dr. Davis states that employees at the Millsboro plant have an output of 6.9 minutes/shift in uncompensated walking time. Defendants' Ex. C at 5.