**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LUISA PEREZ; ELVIN FRANCISCO
GONZA OSOVIO, Individually and
on behalf of all persons similarly
situated,

            *Plaintiffs-Appellees,*

            v.

MOUNTAIRE FARMS, INCORPORATED,
a Delaware Corporation;
MOUNTAIRE FARMS OF DELAWARE,
INCORPORATED, a Delaware
Corporation,

            *Defendants-Appellants,*

            and

RAY BARRIENTOS; MARIA GOMEZ;
JUANA MIGUEL; GIBRAN MOYA
RIVERA; GLORIA PANETO CASTRO;
SHITWA PEREZ LOPEZ; JOSE ANTONIO
SANTIAG LUGO; MARITZA ALCOVER;
JULIO CIFUENTES; JUAN C. COMPIAN;
CARMEN OTERO; IRMA R. PEREZ;
JULISA SANCHEZ; CARLOS TOLLINICHI
LOPEZ; DAYSI DE JESUS VANEGAS;
HAYDEE A. BETANCOURT;

No. 09-1917

WILLIAM VELAZQUEZ RIVERA; LUZ E. VILLAREAL; CELSO ESCALANTE LOPEZ; MANUEL M. HERRERA; LUIS LOPEZ ORTOLAZA; ALEX J. MILLET CABAN; JORGE L. NEGRON MARTINEZ; JANNETT RAMIREZ SEPULVEDA; CHRISTIAN H. SERRANO; CATALINA VELASQUEZ; AVILA E. AVILA; JUAN ROSA CAMACHO; VICTOR MANUEL DIAZ; RAFAEL FONSECA VILLAFANE; YAMILETTE GARCIA QUINONES; LUIS R. IRIZARRY; ELIDAD PERALES; MARIA PEREZ MARRERO; SANDRA RIVERA DIAZ; PEDRO TIRADO BARRETO; YAHAIRA TORRES CINTRON; VICTOR G. TORRES LOPEZ; ANTELMA VASQUEZ; BRIAN VAZQUEZ PEREZ; ANA M. PUENTES; ABNER VELEZ SILVA; ANA MARIA ZAMORA; RAQUEL ARCE RAMOS; ERNESTO BENAVIDES; ANGEL LUIS CALDERON SUAREZ; VICENTE CASTRO, JR.; OSCAR COLON MANGUAL; MARISOL COTTO RODRIGUEZ; JERRY FAMANIA ROCHE; MARIA FEBREZ; GUILLERMO GONZALEZ; SYLVIA GONZALEZ; ELVIA GUDINO; RAFAEL INFANTE; ANGEL M. MUNOZ PEREZ; ROSA R. NIEVES; RUFINA ORTIZ; ABEL ORTIZ MAZARIEGOS; CUAUHTEMOC RAMIEZ; HECTOR ZALAZAR; AGUSTIN BRAVO GONZALES; LEONEL BUENO;

ALBERTO COLON CRUZ; IVAN CRESPO; OLGA GALARZA OSORIO; VICTOR GRACIA LOPEZ; WALDERMAR MENDEZ VAZQUEZ; ROMELIA PEREZ; FLORENCIA PEREZ ESCALANTE; MAURICIO PUCIO; MARIA J. RIVERA; ESPERANZA RODRIGUEZ; RAMON RODRIGUEZ GUZMAN; RUBEN VELASQUEZ; IDELIZ VELASQUEZ VARGAS; JESUS MALPICA VELEZ; BRENDA MATOS CARABALLO; SOFIA MEDRANO; HUTO MORALES; EDGARDO ORTIZ HERNANDEZ; THOMAS PADILLA SILVA; LENNY SANTIAGO LEBRON; RODOLFO VELEZ CUBERO; ADRIAN BRIZENO; CASTILLO MANUEL MONTES; MARY L. GARCIA; PAULA MEJIA MENDEZ; ELEAZAR PEREZ ORTIZ; FELIX BONILLA; ANDREW A. LONG; JULIAN MORALES; STACEY M. NORAT ROSA; JEAN PAUL SOUIL; ADRIAN D. WHITE, SR.; DENES ALEXANDRE; DIEUPUIFAIT ALLIUS; MARIE G. ALLIUS; JOSE MANUEL ANAYA; JOS C. ANGELES; ERIC AYALA CRUZ; ELIZABETH BAEZ; JOSE L. BAEZ RIVERA; AUDIN BATAILLE; JOHANNA BERMUDEZ; CARLOS G. BIRRIEL PEREZ;

SOLANGE BLANCHARD; FLORIBERTO
BONOLA ARELLANO; CASSANDRA
BOWDEN; ANABEL BUSANET VEGA;
LEONIDE M. CANTAVE; JESUS
CARRION; EXALUS CHARLERON;
JAMES A. DALE; TIMOTHY O.
DORSEY; MARIE N. DORVILIER;
LUXONE DORVILUS; JUDITH DUCTAN;
ABSALON DUVERGER; SOLIA C.
DUVERGER; RIGOBERTO ESCALANTE;
MARIA ESTRADA; MICHAEL D.
FARIAS; MARIO FELICIANO FLORES;
LIDUVINA FIGUEROA; DAVID T.
FOGG; JAMES FRAZIER; LEON N.
FRAZIER; MELVIN O. GIDDINS;
MARTA GONZALES; ROBERTO J.
GONZALEZ; MAYRA GONZALEZ
SANTIAGO; LARRY HARMON; MARIA
HERNANDEZ; MANUEL M. HERRERA;
BERRIOS HERRERA HAMILTON;
ROMELUS JEAN-LUCNER; JEAN C. DE
JESUS; ELEAZAR JIMENEZ; ERICK
JIMENEZ TIRADO; JAMES JOHNSON;
LISSON JOSEPH; ANIA B. JULES;
JULIEN JULES; JEOMAR LEBRON
RIVERA; JOY LECATES; JAQUES
LITUS; MARIE YOLENE LOUIS;
FERNANDO MALDONADO; ENID
MANDEZ VAZQUEZ; IVAN MARRERO;
ESPERANZA MARTELL; LUIS S.
MARTINEZ; INTERMO MAZARIEGOS;
JESSE MEEKS; JUAN MERCADO;
NAYRA MERCADO GUERRA;

LINDA MERCADO MORALES;
CHARLES MOOD, JR.; JOSE
MORALES; NELIA MORALES;
SYLVIANA MORIDEN; INES MUNGUIA;
EDWIN NIEVES NIEVES; YASHIRA M.
OCASIO RIVERA; MANFORD ONEY;
ANDREA OSTEN; JERRY J. PATTON;
CHARLES L. PAYTON; DELMAR
PEREZ GODINES; ELIAS PEREZ
MAZARIEGOS; BETZAIDA PEREZ
MENDEZ; RICARDO QUINONES
ROMAN; ANGEL ALICEA RAMIREZ;
JANNETTE RAMIREZ SEPULVEDA;
JULIE L. RAMOS; CYNTHIA REDDICK;
IRWIN RIVERA; GILBERTO RIVERA
LABOY; JONATHAN RIVERA; JUANA
ROBLERO DE LEON; IVAN
RODRIGUEZ; JULIO RODRIGUEZ
CEDENO; ABDIEL RODRIQUEZ
CRESPO; RUBEN RUMOS; CYNTHIA
SANCHEZ; MONICA SANCHEZ; DERSY
SANCHEZ CASTRO; GISELLE D.
SANTIAGO; BRENDA SASTRE;
RICHARD L. SATCHELL; VICTOR
SEGARRA VAZQUEZ; RAFAEL D.
SILVERIO; BONAFICIO SOLOMON;
DOLORES SOLOMON; KELLY TAYLOR;
HENRY TEXEIRA JIMENEZ; CHARLES
E. TIMMONS, JR.; DAVID TORRES;
JASON TORRES RODRIGUEZ; GRACE
TURNAGE; ANEL ULYSSE; FRANCISCO
VARGAZ-FRANQUI;

LUIS A. VASQUEZ; NIURKA M. VELEZ MONTALVO; SANDRA E. VILLATA; LENA ROMAN VILLEGAS; VELUS VIRGILE; SANDY DEE WILLIAMS; BESSIE A. WRIGHT; DAVID ADAMS; ELISEE ARISTE; CARLOS CINTRON; MARIA CISNEROS; YARLEEM COLON GARCIA; MANDEL CORBIN; WILLIAM CUFFEE; FRED D. CUSTIS; MENIEZE GUSTIN; ALONZO HAGANS; SYLPHANE JEAN LESTIN; JOHNNY J. LOPEZ; MANUEL LOPEZ; LARRY MCCOY COOPER; CAROD MERISE; DAUEYSON NEGRON; JENNIFER PENA AYALA; MARIBEL PEREZ; LILIA B. RIVERA; PIERRE L. SAINT HILAIRE; TYRELL TIMMONS; SUSAN TRIPP; MARILU VELEZ CLAUDIO; LUIS E. ALVARADO MORALES; JOYCE A. ASKIUS; NOEL BARRIOS; PAUL DESRARIUS; OLISIA DUCTAN; JOSEPH L. GARCIA; SYLVIA GONZALEZ; GUILLERMINA GUERRERO; JAVIER HERNANDEZ; CLARETTA JACKSON; ERIC RESTO; RIOS EDUARDO RUIZ; MOISES RIVERA; ALBERTO RIVERA FALCON; SARA J. ROCHA; JULIANA RODRIGUEZ ANDINO; ADELA J. SANCHEZ; NEREDIA ELIZABETH WRIGHT; MARIE L. ALTENOR; CARMEN SILVIA APODACA;

JAMES L. BOLDEN; SAINT-REMY
CHARLES; RENISE FLORESTAL; LUIS
C. GARZA; MARIA DE LA LUZ
GONZALEZ; GIL GONZALEZ; ROSA
GONZALEZ; SALVADOR GUERRERO
ROMERO; LOUISE V. HARRIS; VILLA
LOUIGENE; LUIS R. RIVERA
MARRERO; YOLANDA MARTINEZ;
FRANCISCO A. MEDINA; ELIE
MONFORT; BLANCA A. PERDOMO;
CARLOS LUIS PEREZ; JESUS M.
QUEZADA; CARLOS J. REYES; OFELIA
RODRIGUEZ; MIGUEL A. SANTIAGO
RODRIGUEZ; BERENICE S. SANTOS;
LAMONT D. SAVAGE; CHARLES
SAVAGE, JR.; GLYDIS A. SMITH;
ALMA VENEGAS; FRANCISCO
ZAMORA, SR.; CHERYL ZAMUDIO;
ERNST CANTAVE; ANTONIO CARTER;
WILLIAM CESAR; MALVIN CINTRON
ORTIZ; IRIS N. CIRINO PIZARRO;
REGINA CISNEROS; JOHNIE
CONQUEST; GUADALUPE DIAZ PEREZ;
ERENA FLAMER; MARIE GEORGES;
PERR GIDDENS; JENNIFER GONZALEZ;
MAURICE GORDON; EVERARDO J.
JUAREZ; YOON SOO KWAK; MARIA
HERMINIA MOORE; CARLOS
MORALES COLON; SHAWN S.
MULLEN; TRACY A. NOCK;
MERCELANT OCEAN; LAVI ORAS;
CLAUDIA ORTEGA; JUAN PAGAN
SANTIAGO; MICHELLE POINTDUJOUR;

GLORIA R. PUMPHREY; JOAN
QUINONES; AMALIA E. ROMERO;
JESSICA M. ROSARIO RIVERA; IVRAY
SAULS; VIERGELA SENAT; JESSIE R.
SINGLETARY; ANNIE L. STEPHENS;
OLIVER THORNTON; LAURA TOVAR;
JUDITH WILLIAMS; SUZETTE JEAN
BAPTISTE; PAULETTE CHARLERON;
MARTHA CESAR; LELIE DICE;
SHARON L. EATON; LEFILS
FLORESTAL; MELVINA MARIE GIBBS;
FREDIS A. GUZMAN; MICHAEL A.
JACKSON; RAYMOND JOHNSON;
WILFRID LENEUS; FRANCOIS
LIFRANCE; AUGUSTO LOPEZ; ONER
O. NEVAREZ ORTIZ; ALCE ODARIS;
MILAGRO DORIS PASCUAL; ROLAND
H. RAUT; CARLOS M. ROBLES
DELGADO; JUAN A. SANTIAGO
VELASQUEZ; LEON SMITH; BRENDA
STURGIS; NOELIA I. VARGAS;
REYNALDO VEGA; VALERIE
WASHINGTON; LAURA ASCENCIO;
MAGDALENA BRAVO; ELFISE
CASSEUS; JOCELINE DESFINES; ARIEL
DIAZ MORALES; JOHN H. EVANS;
LOURDA MARIE EXANTUS; SELBO
FREJUSTE; WILKELY GARCIA; ELVIRA
GONZALEZ; MARIA GONZALEZ
MONTERROZO; KARINA GUOX-
ARQUETA; RENE GUTIERREZ; WANDA
I. MELENDEZ; PHILLIPE MONFISTON;
JULIANA G. MONTERROZO;

MARIE GABRIELLE MONTILUS;
CARLOS M. MUNIZ TORREZ; DONNE
OGUEZANA; FRANTZ PIERRE;
YOUBENS PIERRE; VALERIE PINKETT;
GUILSON POLYNICE; TIMOTHY
PUMPHREY; CHRISTOPHER
RODRIGUEZ; VICTOR RODRIGUEZ;
BAYRON ROJAS; ELIESE ROMAIN;
MARIE L. ROSIER; ISMAEL RUPERTO;
CRAIG SATCHELL; DONTA E.
VICKERS; JASON TOVAR; JUAN
PEDRO VASQUEZ; JUN JIE ZHENG;
DIANA ALCIUS; CLARENCE BURTON;
HECTOR D. CABAN; RUBEN
CARDONA LUGO; FIRANA
DESRAVINES; MATHURIN EXUME;
CHOISIUS FLORESTAL; PEDRO GIL
GALINDO; SERGIO HERRERA;
CHARLES LECIUS; DULCE JESSICA
LEYVA; ABNER MALDONADO;
BERNARD MONTULUS; CARLINE
MURAT; DONEL PIERRE; JEAN M.
PIERRE-LOUIS; SARAI RODRIGUEZ
RAMOS; ELIZABETH ROSARIO; ZAIDA
IVEETT SANTOS CORREA; ANTHONY
T. HOUSTON; BERNARDA VENTURA;
AURELIA GIL VENTURA; MARGARITA
GIL VENTURA; JEAN LESLY
CHARLES; JACQUES DECEMBRE;
MARIE YANICK DELVA; JEAN
DUMONVIL LIMA; MARIE M.
GUERRIER; ARISTEN ILERA; LAUMISE
ILERA;

ROBELDO LOPEZ; AMERICA D.
MACEDO; REYMUNDO MARTINEZ;
TOMAS MAZARIEGOS VELASQUEZ;
JEAN MONDESTIN; JEAN LOUIS NOEL;
RAMIRO NORIEGA; MIGUEL A. ORTIZ
SERRANO; OMAIRA OTERO MARRERO;
LARRY D. PHILLIPS; AMELICE
PIERRE; GADOUL PIERRILUS; JULIO
ANGEL SANTIAGO PADILLA; RANDY
DE JESUS SOTO,

*Claimants,*

PUBLIC JUSTICE CENTER; LEGAL AID
BUREAU, INCORPORATED; LEGAL AID
JUSTICE CENTER; MARYLAND
EMPLOYMENT LAWYERS
ASSOCIATION; METROPOLITAN
WASHINGTON EMPLOYMENT LAWYERS
ASSOCIATION; SECRETARY OF LABOR,
U.S. Department of Labor,

*Amici Supporting Appellee.*

LUISA PEREZ; ELVIN FRANCISCO
GONZA OSOVIO, Individually and
on behalf of all persons similarly
situated,

        *Plaintiffs-Appellants,*

        v.

MOUNTAIRE FARMS, INCORPORATED,
a Delaware Corporation;
MOUNTAIRE FARMS OF DELAWARE,
INCORPORATED, a Delaware
Corporation,

        *Defendants-Appellees,*

        and

RAY BARRIENTOS; MARIA GOMEZ;
JUANA MIGUEL; GIBRAN MOYA
RIVERA; GLORIA PANETO CASTRO;
SHITWA PEREZ LOPEZ; JOSE ANTONIO
SANTIAG LUGO; MARITZA ALCOVER;
JULIO CIFUENTES; JUAN C. COMPIAN;
CARMEN OTERO; IRMA R. PEREZ;
JULISA SANCHEZ; CARLOS TOLLINICHI
LOPEZ; DAYSI DE JESUS VANEGAS;
HAYDEE A. BETANCOURT; WILLIAM
VELAZQUEZ RIVERA; LUZ E.
VILLAREAL; CELSO ESCALANTE
LOPEZ; MANUEL M. HERRERA; LUIS
LOPEZ ORTOLAZA; ALEX J. MILLET
CABAN; JORGE L. NEGRON
MARTINEZ; JANNETT RAMIREZ
SEPULVEDA; CHRISTIAN H. SERRANO;
CATALINA VELASQUEZ;

        No. 09-1966

AVILA E. AVILA; JUAN ROSA
CAMACHO; VICTOR MANUEL DIAZ;
RAFAEL FONSECA VILLAFANE;
YAMILETTE GARCIA QUINONES; LUIS
R. IRIZARRY; ELIDAD PERALES;
MARIA PEREZ MARRERO; SANDRA
RIVERA DIAZ; PEDRO TIRADO
BARRETO; YAHAIRA TORRES
CINTRON; VICTOR G. TORRES LOPEZ;
ANTELMA VASQUEZ; BRIAN VAZQUEZ
PEREZ; ANA M. PUENTES; ABNER
VELEZ SILVA; ANA MARIA ZAMORA;
RAQUEL ARCE RAMOS; ERNESTO
BENAVIDES; ANGEL LUIS CALDERON
SUAREZ; VICENTE CASTRO, JR.;
OSCAR COLON MANGUAL; MARISOL
COTTO RODRIGUEZ; JERRY FAMANIA
ROCHE; MARIA FEBREZ; GUILLERMO
GONZALEZ; SYLVIA GONZALEZ;
ELVIA GUDINO; RAFAEL INFANTE;
ANGEL M. MUNOZ PEREZ; ROSA R.
NIEVES; RUFINA ORTIZ; ABEL ORTIZ
MAZARIEGOS; CUAUHTEMOC RAMIEZ;
HECTOR ZALAZAR; AGUSTIN BRAVO
GONZALES; LEONEL BUENO;
ALBERTO COLON CRUZ;

IVAN CRESPO; OLGA GALARZA
OSORIO; VICTOR GRACIA LOPEZ;
WALDERMAR MENDEZ VAZQUEZ;
ROMELIA PEREZ; FLORENCIA PEREZ
ESCALANTE; MAURICIO PUCIO;
MARIA J. RIVERA; ESPERANZA
RODRIGUEZ; RAMON RODRIGUEZ
GUZMAN; RUBEN VELASQUEZ; IDELIZ
VELASQUEZ VARGAS; JESUS MALPICA
VELEZ; BRENDA MATOS CARABALLO;
SOFIA MEDRANO; HUTO MORALES;
EDGARDO ORTIZ HERNANDEZ;
THOMAS PADILLA SILVA; LENNY
SANTIAGO LEBRON; RODOLFO VELEZ
CUBERO; ADRIAN BRIZENO;
CASTILLO MANUEL MONTES; MARY
L. GARCIA; PAULA MEJIA MENDEZ;
ELEAZAR PEREZ ORTIZ; FELIX
BONILLA; ANDREW A. LONG; JULIAN
MORALES; STACEY M. NORAT ROSA;
JEAN PAUL SOUIL; ADRIAN D.
WHITE, SR.; DENES ALEXANDRE;
DIEUPUIFAIT ALLIUS; MARIE G.
ALLIUS; JOSE MANUEL ANAYA; JOS
C. ANGELES; ERIC AYALA CRUZ;
ELIZABETH BAEZ; JOSE L. BAEZ
RIVERA; AUDIN BATAILLE; JOHANNA
BERMUDEZ; CARLOS G. BIRRIEL
PEREZ; SOLANGE BLANCHARD;
FLORIBERTO BONOLA ARELLANO;
CASSANDRA BOWDEN; ANABEL
BUSANET VEGA; LEONIDE M.
CANTAVE; JESUS CARRION;

EXALUS CHARLERON; JAMES A.
DALE; TIMOTHY O. DORSEY; MARIE
N. DORVILIER; LUXONE DORVILUS;
JUDITH DUCTAN; ABSALON
DUVERGER; SOLIA C. DUVERGER;
RIGOBERTO ESCALANTE; MARIA
ESTRADA; MICHAEL D. FARIAS;
MARIO FELICIANO FLORES; LIDUVINA
FIGUEROA; DAVID T. FOGG; JAMES
FRAZIER; LEON N. FRAZIER; MELVIN
O. GIDDINS; MARTA GONZALES;
ROBERTO J. GONZALEZ; MAYRA
GONZALEZ SANTIAGO; LARRY
HARMON; MARIA HERNANDEZ;
MANUEL M. HERRERA; BERRIOS
HERRERA HAMILTON; ROMELUS
JEAN-LUCNER; JEAN C. DE JESUS;
ELEAZAR JIMENEZ; ERICK JIMENEZ
TIRADO; JAMES JOHNSON; LISSON
JOSEPH; ANIA B. JULES; JULIEN
JULES; JEOMAR LEBRON RIVERA; JOY
LECATES; JAQUES LITUS; MARIE
YOLENE LOUIS; FERNANDO
MALDONADO; ENID MANDEZ
VAZQUEZ; IVAN MARRERO;
ESPERANZA MARTELL; LUIS S.
MARTINEZ; INTERMO MAZARIEGOS;
JESSE MEEKS; JUAN MERCADO;
NAYRA MERCADO GUERRA; LINDA
MERCADO MORALES; CHARLES
MOOD, JR.; JOSE MORALES; NELIA
MORALES; SYLVIANA MORIDEN; INES
MUNGUIA; EDWIN NIEVES NIEVES;

YASHIRA M. OCASIO RIVERA; MANFORD ONEY; ANDREA OSTEN; JERRY J. PATTON; CHARLES L. PAYTON; DELMAR PEREZ GODINES; ELIAS PEREZ MAZARIEGOS; BETZAIDA PEREZ MENDEZ; RICARDO QUINONES ROMAN; ANGEL ALICEA RAMIREZ; JANNETTE RAMIREZ SEPULVEDA; JULIE L. RAMOS; CYNTHIA REDDICK; IRWIN RIVERA; GILBERTO RIVERA LABOY; JONATHAN RIVERA; JUANA ROBLERO DE LEON; IVAN RODRIGUEZ; JULIO RODRIGUEZ CEDENO; ABDIEL RODRIQUEZ CRESPO; RUBEN RUMOS; CYNTHIA SANCHEZ; MONICA SANCHEZ; DERSY SANCHEZ CASTRO; GISELLE D. SANTIAGO; BRENDA SASTRE; RICHARD L. SATCHELL; VICTOR SEGARRA VAZQUEZ; RAFAEL D. SILVERIO; BONAFICIO SOLOMON; DOLORES SOLOMON; KELLY TAYLOR; HENRY TEXEIRA JIMENEZ; CHARLES E. TIMMONS, JR.; DAVID TORRES; JASON TORRES RODRIGUEZ; GRACE TURNAGE; ANEL ULYSSE; FRANCISCO VARGAZ-FRANQUI; LUIS A. VASQUEZ; NIURKA M. VELEZ MONTALVO; SANDRA E. VILLATA; LENA ROMAN VILLEGAS; VELUS VIRGILE; SANDY DEE WILLIAMS; BESSIE A. WRIGHT; DAVID ADAMS; ELISEE ARISTE; CARLOS CINTRON; MARIA CISNEROS;

YARLEEM COLON GARCIA; MANDEL CORBIN; WILLIAM CUFFEE; FRED D. CUSTIS; MENIEZE GUSTIN; ALONZO HAGANS; SYLPHANE JEAN LESTIN; JOHNNY J. LOPEZ; MANUEL LOPEZ; LARRY MCCOY COOPER; CAROD MERISE; DAUEYSON NEGRON; JENNIFER PENA AYALA; MARIBEL PEREZ; LILIA B. RIVERA; PIERRE L. SAINT HILAIRE; TYRELL TIMMONS; SUSAN TRIPP; MARILU VELEZ CLAUDIO; LUIS E. ALVARADO MORALES; JOYCE A. ASKIUS; NOEL BARRIOS; PAUL DESRARIUS; OLISIA DUCTAN; JOSEPH L. GARCIA; SYLVIA GONZALEZ; GUILLERMINA GUERRERO; JAVIER HERNANDEZ; CLARETTA JACKSON; ERIC RESTO; RIOS EDUARDO RUIZ; MOISES RIVERA; ALBERTO RIVERA FALCON; SARA J. ROCHA; JULIANA RODRIGUEZ ANDINO; ADELA J. SANCHEZ; NEREDIA ELIZABETH WRIGHT; MARIE L. ALTENOR; CARMEN SILVIA APODACA; JAMES L. BOLDEN; SAINT-REMY CHARLES; RENISE FLORESTAL; LUIS C. GARZA; MARIA DE LA LUZ GONZALEZ;

GIL GONZALEZ; ROSA GONZALEZ;
SALVADOR GUERRERO ROMERO;
LOUISE V. HARRIS; VILLA
LOUIGENE; LUIS R. RIVERA
MARRERO; YOLANDA MARTINEZ;
FRANCISCO A. MEDINA; ELIE
MONFORT; BLANCA A. PERDOMO;
CARLOS LUIS PEREZ; JESUS M.
QUEZADA; CARLOS J. REYES; OFELIA
RODRIGUEZ; MIGUEL A. SANTIAGO
RODRIGUEZ; BERENICE S. SANTOS;
LAMONT D. SAVAGE; CHARLES
SAVAGE, JR.; GLYDIS A. SMITH;
ALMA VENEGAS; FRANCISCO
ZAMORA, SR.; CHERYL ZAMUDIO;
ERNST CANTAVE; ANTONIO CARTER;
WILLIAM CESAR; MALVIN CINTRON
ORTIZ; IRIS N. CIRINO PIZARRO;
REGINA CISNEROS; JOHNIE
CONQUEST; GUADALUPE DIAZ PEREZ;
ERENA FLAMER; MARIE GEORGES;
PERR GIDDENS; JENNIFER GONZALEZ;
MAURICE GORDON; EVERARDO J.
JUAREZ; YOON SOO KWAK; MARIA
HERMINIA MOORE; CARLOS
MORALES COLON; SHAWN S.
MULLEN; TRACY A. NOCK;
MERCELANT OCEAN; LAVI ORAS;
CLAUDIA ORTEGA; JUAN PAGAN
SANTIAGO; MICHELLE POINTDUJOUR;
GLORIA R. PUMPHREY; JOAN
QUINONES;

AMALIA E. ROMERO; JESSICA M. ROSARIO RIVERA; IVRAY SAULS; VIERGELA SENAT; JESSIE R. SINGLETARY; ANNIE L. STEPHENS; OLIVER THORNTON; LAURA TOVAR; JUDITH WILLIAMS; SUZETTE JEAN BAPTISTE; PAULETTE CHARLERON; MARTHA CESAR; LELIE DICE; SHARON L. EATON; LEFILS FLORESTAL; MELVINA MARIE GIBBS; FREDIS A. GUZMAN; MICHAEL A. JACKSON; RAYMOND JOHNSON; WILFRID LENEUS; FRANCOIS LIFRANCE; AUGUSTO LOPEZ; ONER O. NEVAREZ ORTIZ; ALCE ODARIS; MILAGRO DORIS PASCUAL; ROLAND H. RAUT; CARLOS M. ROBLES DELGADO; JUAN A. SANTIAGO VELASQUEZ; LEON SMITH; BRENDA STURGIS; NOELIA I. VARGAS; REYNALDO VEGA; VALERIE WASHINGTON; LAURA ASCENCIO; MAGDALENA BRAVO; ELFISE CASSEUS; JOCELINE DESFINES; ARIEL DIAZ MORALES; JOHN H. EVANS; LOURDA MARIE EXANTUS; SELBO FREJUSTE; WILKELY GARCIA; ELVIRA GONZALEZ; MARIA GONZALEZ MONTERROZO; KARINA GUOX-ARQUETA; RENE GUTIERREZ; WANDA I. MELENDEZ; PHILLIPE MONFISTON; JULIANA G. MONTERROZO; MARIE GABRIELLE MONTILUS; CARLOS M. MUNIZ TORREZ; DONNE OGUEZANA; FRANTZ PIERRE;

YOUBENS PIERRE; VALERIE PINKETT; GUILSON POLYNICE; TIMOTHY PUMPHREY; CHRISTOPHER RODRIGUEZ; VICTOR RODRIGUEZ; BAYRON ROJAS; ELIESE ROMAIN; MARIE L. ROSIER; ISMAEL RUPERTO; CRAIG SATCHELL; DONTA E. VICKERS; JASON TOVAR; JUAN PEDRO VASQUEZ; JUN JIE ZHENG; DIANA ALCIUS; CLARENCE BURTON; HECTOR D. CABAN; RUBEN CARDONA LUGO; FIRANA DESRAVINES; MATHURIN EXUME; CHOISIUS FLORESTAL; PEDRO GIL GALINDO; SERGIO HERRERA; CHARLES LECIUS; DULCE JESSICA LEYVA; ABNER MALDONADO; BERNARD MONTULUS; CARLINE MURAT; DONEL PIERRE; JEAN M. PIERRE-LOUIS; SARAI RODRIGUEZ RAMOS; ELIZABETH ROSARIO; ZAIDA IVEETT SANTOS CORREA; ANTHONY T. HOUSTON; BERNARDA VENTURA; AURELIA GIL VENTURA; MARGARITA GIL VENTURA; JEAN LESLY CHARLES; JACQUES DECEMBRE; MARIE YANICK DELVA; JEAN DUMONVIL LIMA; MARIE M. GUERRIER; ARISTEN ILERA; LAUMISE ILERA; ROBELDO LOPEZ; AMERICA D. MACEDO; REYMUNDO MARTINEZ; TOMAS MAZARIEGOS VELASQUEZ; JEAN MONDESTIN;

JEAN LOUIS NOEL; RAMIRO
NORIEGA; MIGUEL A. ORTIZ
SERRANO; OMAIRA OTERO MARRERO;
LARRY D. PHILLIPS; AMELICE
PIERRE; GADOUL PIERRILUS; JULIO
ANGEL SANTIAGO PADILLA; RANDY
DE JESUS SOTO,

*Claimants,*

PUBLIC JUSTICE CENTER; LEGAL AID
BUREAU, INCORPORATED; LEGAL AID
JUSTICE CENTER; MARYLAND
EMPLOYMENT LAWYERS
ASSOCIATION; METROPOLITAN
WASHINGTON EMPLOYMENT LAWYERS
ASSOCIATION; SECRETARY OF LABOR,
U.S. Department of Labor,

*Amici Supporting Appellant.*

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
Andre M. Davis, District Judge.
(1:06-cv-00121-AMD)

Argued: January 26, 2011

Decided: June 7, 2011

Before WILKINSON and KEENAN, Circuit Judges, and
Irene C. BERGER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

Affirmed in part, vacated in part by published opinion. Judge Keenan wrote the majority opinion, in which Judge Berger joined. Judge Wilkinson wrote an opinion concurring in part and concurring in the judgment.

## COUNSEL

**ARGUED:** James Larry Stine, WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, PC, Atlanta, Georgia, for Appellants/Cross-Appellees. C. Christopher Brown, BROWN, GOLDSTEIN & LEVY, LLP, Baltimore, Maryland, for Appellees/Cross-Appellants. Nickole Carrieanna Winnett, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amici Curiae. **ON BRIEF:** Elizabeth K. Dorminey, WIMBERLY, LAWSON, STECKEL, SCHNEIDER & STINE, PC, Atlanta, Georgia, for Appellants/Cross-Appellees. Monisha Cherayil, PUBLIC JUSTICE CENTER, Baltimore, Maryland, for Amici Curiae Public Justice Center, Legal Aid Bureau, Incorporated, Legal Aid Justice Center, Maryland Employment Lawyers Association, and Metropolitan Washington Employment Lawyers Association. M. Patricia Smith, Solicitor of Labor, William C. Lesser, Acting Associate Solicitor, Paul L. Frieden, Counsel for Appellate Litigation, UNITED STATES DEPARTMENT OF LABOR, Washington, D.C., for Amicus Curiae Secretary of Labor.

## OPINION

KEENAN, Circuit Judge:

Luisa Perez, an employee of Mountaire Farms, Inc. and Mountaire Farms of Delaware, Inc. (collectively, Mountaire), filed this action on behalf of herself and similarly-situated employees (collectively, the employees) to recover wages and

liquidated damages under the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201, et seq., for time spent donning and doffing protective gear during the workday at Mountaire's poultry processing plants. The district court held that the activities identified by the employees are compensable as "work" under the FLSA, and that Mountaire's failure to pay the employees for these activities constituted a violation of the FLSA.

We agree with the district court in substantial part and hold that the time spent donning and doffing protective gear at the beginning and the end of each workday is compensable as "work" under the FLSA. However, based on this Court's decision in *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209 (4th Cir. 2009), *cert. denied*, 131 S. Ct. 187 (2010), decided after the district court entered judgment in the present case, we are required to hold that the mid-shift donning and doffing of protective gear at the employees' meal break is not compensable. *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 516 (D. Md. 2009).

Additionally, we affirm the district court's holding that Mountaire's violations of the FLSA were not "willful" and, accordingly, a two-year statute of limitations is applicable to the employees' claims for "back pay." Lastly, we affirm the district court's holding that Mountaire acted in good faith and the court's resulting decision declining to award liquidated damages to the employees.

I.

Mountaire is a company that engages in the slaughtering, processing,[1] and distribution of chickens and chicken parts. Mountaire operates chicken processing plants in Selbyville and Millsboro, Delaware.

---

[1]Chicken processing includes the hanging, cutting, and deboning of chickens.

Mountaire pays the employees based on "line time," which begins when the first chicken arrives at the first work station on the "production line" of each department, and ends when the last chicken leaves the last work station on each "production line." Mountaire does not pay its employees for any of the time spent donning and doffing their protective gear.

Mountaire's employees who work on the "production line" butchering and processing chickens are required to wear certain protective gear, including ear plugs, "bump caps,"[2] smocks, hair and beard nets, and steel-toed rubber boots. Depending on their job assignment, employees also are required to wear other protective gear such as "nitrile/latex/rubber" gloves, aprons, safety glasses, cut-resistant gloves, chain gloves, and sleeves.[3]

As required by Mountaire's company rules and the regulations promulgated by the United States Department of Agriculture, 9 C.F.R. § 416.5, and the Occupational Safety and Health Administration (OSHA), 29 C.F.R. § 1910.132(a), the employees must don their protective gear, beginning with their smocks, before starting work on the "production line." The employees typically don their protective gear next to their lockers, in the bathrooms, in the production area, or in the hallways as they walk to their work stations.

Once the employees enter the production area, they must sanitize their protective gear by walking through a foot bath and by splashing sanitizing solution on their aprons. Employees who wear gloves must dip their gloves into a sanitizing solution, and employees who are not required to wear gloves must wash their hands.

---

[2]A "bump cap" is a plastic hat that resembles a construction helmet.

[3]All the items of protective gear referenced in this paragraph will be referred to collectively in this opinion as "protective gear."

Mountaire provides its employees a thirty-six minute unpaid meal break. Although not required explicitly to do so by Mountaire, almost all the employees sanitize their aprons, boots, and gloves before leaving the production area for their lunch break so that they may eat without blood and raw chicken parts on their persons. Employees usually doff their aprons and gloves during the meal break. At the end of the meal break, before re-entering the production floor, the employees are required by Mountaire's rules and by the Department of Agriculture and OSHA regulations to again don their protective gear.

At the end of each work shift, before leaving the plant, the employees doff their protective gear. The employees usually place their soiled smocks in hampers located in the plant's hallways. Each day, Mountaire launders the smocks and provides clean smocks to its employees on racks located in the plant's hallways. The employees store their remaining protective gear in lockers that are provided by Mountaire. Every Friday, the employees must take home all their protective gear stored in the lockers because the locker rooms are cleaned on the weekends.

After the employees filed their complaint in this case, Mountaire changed its policy to allow employees to take their smocks home. Although the employees signed written forms to indicate that they read and understood the policy, many employees refrained from taking the smocks home.

II.

In January 2006, employees of two Mountaire facilities, located in Millsboro and Selbyville, Delaware, filed a complaint in the district court against Mountaire under the FLSA and Delaware state law. The employees sought compensation for the time spent donning, doffing, and sanitizing (hereafter, donning and doffing) their protective gear. The employees also sought compensation for time spent walking to and from

their work stations and for working during their meal break. The district court bifurcated the claims arising from the two different plant facilities, and proceeded first to consider the Millsboro employees' claims (the Millsboro action), which is the subject of the present appeal.

Mountaire moved for summary judgment in the Millsboro action. The district court denied the motion for summary judgment and certified the Millsboro action as a collective action under § 216(b) of the FLSA. *Perez v. Mountaire Farms, Inc.*, 601 F. Supp. 2d 670, 673, 684 (D. Md. 2009).

In March 2009, the district court conducted a bench trial on the Millsboro action. At the trial, both parties presented expert witnesses who testified about the amount of time required for the employees to don and doff their protective gear. These expert witnesses conducted studies at the Millsboro facility to measure the time spent by the Millsboro employees (hereafter, the employees) in the various acts of donning and doffing.

The employees' expert witness, Dr. Robert Radwin, recorded on videotape a group of randomly-selected employees donning and doffing their protective gear under actual working conditions. In Dr. Radwin's study, the donning process began when an employee first acquired an item of protective gear, and the doffing process ended when the employee released the last item of gear. The results of Dr. Radwin's study showed that the total mean donning and doffing time by an employee was 20.879 minutes. Using a "95 percent confidence interval,"[4] Dr. Radwin concluded that the employees spent a total time of 20.013 minutes per day donning and doffing their protective gear.

---

[4]*See* D. Barnes & J. Conley, *Statistical Evidence in Litigation*, § 3.15 at 107 (1986) (defining a confidence interval as a limit above or below or a range around the sample mean, beyond which the true population is unlikely to fall).

Mountaire's expert witness, Dr. Jerry Davis, conducted a study in a conference room, where he recorded on videotape various employees who were selected and recruited by Mountaire. Before recording the study participants, Dr. Davis informed them that he was conducting a study on donning and doffing, and that the participants would be timed while donning and doffing their protective gear. As the participants donned and doffed the protective gear in the conference room, Dr. Davis timed them. Dr. Davis also calculated "walking time" by multiplying the selected employees' average walking speed of 3.0 miles per hour by the average distance that the employees typically walked from the locker room to the work station on the production floor. Based on his calculations, Dr. Davis concluded that the total time spent by these employees donning, doffing, and walking to and from their work stations was 10.2 minutes.

After the trial, the district court issued an opinion in which it held that the time spent by the employees donning and doffing their protective gear at the beginning and end of a work shift is compensable as "work" under the FLSA. *Perez*, 610 F. Supp. 2d at 516. The district court also held that these activities are compensable as "work" when they occur mid-shift at the employees' unpaid meal break. *Id.* at 521.

To calculate the amount of compensable time, the district court compared the studies conducted by Dr. Davis and Dr. Radwin, and ultimately declined to accept Dr. Davis's conclusions regarding donning and doffing times. Instead, the district court relied on Dr. Radwin's study to calculate the compensable time spent by the employees in the acts of donning and doffing. However, the district court found that Dr. Radwin's time calculation of 20.879 minutes was "a slight overestimation," and the district court accordingly found that the total time spent donning and doffing was 17 minutes. *Id.* at 524.

The district court also held that Mountaire did not willfully violate the FLSA and that, therefore, the applicable statute of

limitations for the FLSA claims under 29 U.S.C. § 255(a) was two years, rather than three years as asserted by the employees. *Id.* at 527. Additionally, the district court held that Mountaire acted in good faith and, accordingly, rejected the employees' claim for liquidated damages. *Id.*

III.

On appeal to this Court, Mountaire argues that the district court erred in holding that Mountaire violated the FLSA by failing to compensate its employees for time spent donning and doffing their protective gear at the beginning and end of their work shifts, and at their meal breaks. On cross-appeal, the employees argue that the district court erred in concluding that a two-year statute of limitations applies to the employees' FLSA claims and in declining to award liquidated damages.

We review a district court's judgment entered after a bench trial under a "mixed standard of review." *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 427 (4th Cir. 2010). Under this standard, we review the district court's findings of fact for clear error and conclusions of law de novo. *Id.*

In determining whether the FLSA requires Mountaire to compensate its employees for the time they spend donning and doffing their protective gear, we begin our analysis with the language of the statute. The FLSA provides that employers shall pay employees a minimum hourly wage for all "hours worked." 29 U.S.C. §§ 206, 207. This statutory requirement is applicable unless the time at issue is "de minimis." *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946). The term "work" is not defined in the FLSA, and courts are left to determine the meaning of the term. *See IBP, Inc. v. Alvarez*, 546 U.S. 21, 25 (2005).

When applying the term "work" to claims asserted under the FLSA, the Supreme Court has defined the term broadly.

*Id.* For example, the Supreme Court has defined "the statutory workweek" to include "all time during which an employee is necessarily required to be on the employer's premises, on duty or at a prescribed workplace." *Anderson*, 328 U.S. at 690-91; *see also Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 598 (1944) (defining "work" as physical or mental exertion, whether burdensome or not, which is controlled or required by the employer and pursued necessarily and primarily for the benefit of the employer and his business).

Under the "continuous workday rule," the compensable workday begins with the first "principal activity" of a job and ends with the employee's last "principal activity." *Alvarez*, 546 U.S. at 29 (citing 29 C.F.R. § 790.6(b)). This Court has determined, however, that the continuous workday does not include time spent during a "bona fide meal period." *Sepulveda*, 591 F.3d at 216.

Although the FLSA requires that an employer compensate an employee for "work," the Portal-to-Portal Act of 1947 (the Portal Act), 29 U.S.C. §§ 251-62, amended the FLSA and relieves employers of the obligation to compensate an employee for "activities which are preliminary to or postliminary to [the] principal activity or activities" of a job. The Portal Act excludes from compensation such activities that "occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activity or activities." 29 U.S.C. § 254(a)(2).

Preliminary and postliminary activities are compensable, however, if they are an "integral and indispensable part of the [employee's] principal activities." *Steiner v. Mitchell*, 350 U.S. 247, 256 (1956). As explained by the Supreme Court, an "integral and indispensable" activity is itself a principal activity for purposes of the Portal Act. *Alvarez*, 546 U.S. at 37.

In *Steiner*, the Supreme Court first applied the "integral and indispensable" test to determine whether workers in a battery manufacturing plant should be compensated for time spent changing clothes at the beginning and end of work shifts, and taking showers at the end of the workday. 350 U.S. at 248. The evidence presented in *Steiner* showed that during the work shifts, employees at the manufacturing plant worked with toxic chemicals, which emitted dangerous fumes that permeated the plant and created a risk of serious injury to the employees. *Id.* at 249-50. To protect the workers from continuing exposure to the chemicals, the custom and practice in the industry was to require employees to change clothes and to take showers at the end of their work shifts. *Id.* at 250.

In accordance with state law, the employer in *Steiner* provided its employees with shower facilities and locker rooms. *Id.* at 251. The employer also provided "old but clean work clothes" free of charge for its employees to wear while working. *Id.* The employees changed into these "work clothes" when they arrived at work, and changed out of these "work clothes" and took showers at the end of their work shifts. *Id.*

The Supreme Court held that the time spent by the employees in changing clothes and in taking showers was compensable under the FLSA as "work." *Id.* at 256. In its analysis, the Supreme Court acknowledged that the case did not involve "changing clothes and showering under normal conditions" and stressed the important health and safety risks associated with the process of manufacturing batteries. *Id.* at 248-49. Although the Court did not define the phrase "integral and indispensable," the Court stated that "it would be difficult to conjure up an instance where changing clothes and showering are more clearly an integral and indispensable part of the principal activity of the employment than in the case of these employees." *Id.* at 256.

This Court has not yet applied the "integral and indispensable" test established in *Steiner*, for we were not required to

determine its application in *Sepulveda v. Allen Family Foods, Inc.* In that case, time spent changing clothes was non-compensable according to a custom or practice under a collective bargaining agreement as was authorized by § 203(o) of the FLSA. *See* 29 U.S.C. § 203(o) ("[T]here shall be excluded any time spent in changing clothes or washing at the beginning or end of each workday which was excluded . . . by the express terms of or by custom or practice under a bona fide collective-bargaining agreement applicable to the particular employee."). We accordingly addressed the question whether donning and doffing protective equipment in a poultry plant was "changing clothes" for purposes of that provision. 591 F.3d at 214.

The decision in *Sepulveda* did not reach the primary issue we are called upon to resolve today, but in fact noted that "[i]t is an open question in this circuit whether donning and doffing protective gear is . . . 'integral and indispensable' to the principal activity of poultry processing." *Id.* However, two of our sister circuits have applied the "integral and indispensable" test with regard to the donning and doffing of protective gear in food processing plants.

In *Franklin v. Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010), the Sixth Circuit considered the issue of employee compensation for time spent donning and doffing food safety uniforms and protective gear at the beginning and the end of work shifts. The protective gear at issue included hair and beard nets, safety glasses, ear plugs, and "bump caps." *Id.* at 608.

The Sixth Circuit applied the *Steiner* test, asking whether the activities of donning and doffing were an "integral and indispensable" part of the principal activity of the employment. *Id.* at 619-20. The Sixth Circuit answered this question in the affirmative, reasoning that the activities were required by the manufacturer, and ensured untainted products and safe and sanitary working conditions. *Id.* at 620.

In a case involving the donning and doffing of protective gear at a meat processing plant, *Alvarez v. IBP, Inc.*, 339 F.3d 894 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005),[5] the Ninth Circuit also applied the *Steiner* test. The court considered whether these activities of donning and doffing at the beginning and end of a work shift were "integral and indispensable" to the principal activity of the employment, inquiring whether the activities were "necessary to the principal work performed and done for the benefit of the employer." *Id.* at 902-03.

The Ninth Circuit concluded that the "integral and indispensable" test set forth in *Steiner* was satisfied with regard to the donning and doffing of all the protective gear at issue. *Id.* at 903. However, the court excluded from compensation the time employees spent donning and doffing "non-unique" gear such as hard hats and safety goggles, holding that although such gear also was "integral and indispensable" to the principal activities of employment, the time spent donning and doffing those items was "de minimis." *Id.* at 903-04.

In contrast, the Second Circuit has interpreted the holding in *Steiner* more narrowly. In *Gorman v. Consolidated Edison Corp.*, 488 F.3d 586, 593 (2d Cir. 2007), the court held that donning and doffing is only "integral and indispensable" to a principal activity when the principal activity is performed in a lethal environment.

Upon our consideration of these opposing views, we conclude that application of the *Steiner* test is not confined to the narrow factual circumstances of a lethal manufacturing envi-

---

[5]On appeal to the Supreme Court, the employers in *Alvarez* did not challenge the Ninth Circuit's holding that, in light of *Steiner*, donning and doffing of protective equipment is compensable under the Portal Act. *Alvarez*, 546 U.S. at 32. Instead, the employers appealed a separate ruling regarding the compensability of walking time. *Id.* The Supreme Court held that walking time is compensable if it occurs after the beginning of the employee's first principal activity and before the end of the employee's last principal activity. *Id.* at 37.

ronment. Rather, as the Supreme Court explained in *Steiner*, the facts of that case simply presented an obvious example of an activity that is "integral and indispensable." *Steiner*, 350 U.S. at 256. Therefore, we hold that the *Steiner* test is applicable to issues of donning and doffing at the beginning and the end of work shifts in the poultry processing industry. *See Franklin*, 619 F.3d at 619-20; *Alvarez*, 339 F.3d at 902-03.

## IV.

We turn now to apply the *Steiner* test to the facts of the present case. In the absence of any binding authority defining the term "integral and indispensable," we observe that the Ninth Circuit, in its *Alvarez* decision, provided a definition of the phrase that follows the analysis of *Steiner* by considering the conduct at issue in the context of the employer's principal activities. Under the Ninth Circuit's definition in *Alvarez*, the donning and doffing of protective gear at the beginning and the end of a work shift are acts "integral and indispensable" to the employer's principal activity when the donning and doffing are: 1) necessary to the principal work performed; and 2) primarily benefit the employer. *See Alvarez*, 339 F.3d at 902-03. An act is necessary to a principal activity if that act is required by law, by company policy, or by the nature of the work performed. *Id.* at 903 (citing 29 C.F.R. § 790.8(c) n.65).[6] Other circuit courts have used a similar definition of the term "integral and indispensable." *See Franklin*, 619 F.3d at 620; *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344 (11th Cir. 2007).

Because we agree that the two-part definition employed by

---

[6]The Secretary of Labor has issued interpretive statements that explain the meaning of "principal activities" as stated in the Portal Act. *See* 29 C.F.R. § 790.8. For example, according to footnote 65 of 29 C.F.R. § 790.8(c), changing clothes on an employer's premises during the workday may be a principal activity if changing clothes is "required by law, by rules of the employer, or by the nature of the work."

the Ninth Circuit in *Alvarez* provides a consistent construct for application of the *Steiner* test, we apply that two-part definition to determine whether the employees' acts of donning and doffing at the beginning and the end of work shifts are "integral and indispensable" to Mountaire's principal activities. In adopting this definition from *Alvarez*, we reject Mountaire's contention that this definition effectively will undermine application of the Portal Act. The requirements of this definition, that an act be necessary to the principal work and primarily benefit the employer, ensure that an employee will only be compensated for such acts that are essential to the principal activity, rather than those that merely precede or follow in a temporal sense the performance of that principal activity. Therefore, we turn now to consider the acts of donning and doffing in the present case, which occur at the beginning and the end of the employees' work shifts.

## A. *Donning and Doffing at Beginning and End of Work Shifts*

As an initial matter, and contrary to Mountaire's suggestion, we decline to distinguish the employees' protective gear as either "specialized" or "generic." This distinction was not made in *Steiner*. The work clothes at issue in *Steiner* were simply described as "old but clean work clothes," and the Supreme Court did not characterize the clothes as "special." *See Steiner*, 350 U.S. at 251. Thus, we hold that these terms are not relevant to our "integral and indispensable" analysis, and we do not classify the employees' protective gear in this manner.

To determine whether the employees' acts of donning and doffing at the beginning and the end of their work shifts are "integral and indispensable" to Mountaire's principal activity, we first consider whether those acts are necessary to the principal work of chicken processing. *See Alvarez*, 339 F.3d at 902-03. Mountaire does not dispute the district court's finding that the employees are required as a matter of federal law to

wear certain protective gear on the "production line." These legal requirements are based on regulations concerning sanitation promulgated by the United States Department of Agriculture, and on safety regulations established by OSHA. *See* 29 C.F.R. § 1910.132(a); 9 C.F.R. § 416.5.

In order to comply with these legal requirements, Mountaire's company policy mandates that the employees don and sanitize certain items before entering the production area. The employees must don "bump caps," and hair and beard nets, in order to prevent hair from falling into the chicken products. The employees are required to wear specific types of ear plugs, which vary depending on which section of the plant the employee is located. Also, the employees must don smocks and aprons to prevent food contamination. Clean smocks are so important to chicken processing that Mountaire launders the smocks daily and provides them to the employees free of charge.

The employees also are required to sanitize their protective gear by walking through a foot bath and by splashing sanitizing solution on their aprons. Employees who wear gloves must dip their gloves into a sanitizing solution, and employees who are not required to wear gloves must wash their hands. Any Mountaire employee who fails to comply with these company rules is subject to discipline or termination.

The district court concluded that certain activities are necessary for chicken processing even though these activities are not required by law or company policy. The district court found that although employees are not required to wear clean gloves, the nature of the work makes this necessary so that the employees can hold the knives safely while handling the blood and fat from the chickens.

This factual record amply demonstrates that the donning and doffing of the employees' protective gear at the beginning and end of work shifts is necessary to their work on the "pro-

duction line." The overriding concerns of safety and sanitation plainly mandate this conclusion.

Our conclusion that these activities are necessary to chicken processing, however, does not of itself end the inquiry whether these activities are "integral and indispensable" to that work. *Alvarez*, 546 U.S. at 40-41. We also must consider whether the record supports a conclusion that the employees' acts of donning and doffing primarily benefit Mountaire. *Alvarez*, 339 F.3d at 902-03.

The district court recognized that the employees' donning and doffing of protective gear at the beginning and end of their work shifts benefits the employees by protecting them from workplace hazards. However, the district court found that these activities primarily benefit Mountaire by "protect[-ing] the products from contamination, help[ing] keep work-ers' compensation payments down, keep[ing] missed time to a minimum, and shield[ing] the company from pain and suf-fering payments." *Perez*, 610 F. Supp. 2d at 518. Based on the considerable factual record before us establishing the impor-tance of the protective gear in ensuring the safety and sanita-tion of the "production line," we conclude that the employees' acts of donning and doffing at the beginning and the end of their work shifts primarily benefit Mountaire.

Because these acts of donning and doffing protective gear at the beginning and end of the employees' work shifts are necessary to Mountaire's chicken processing and primarily benefit Mountaire, we conclude that these activities are "inte-gral and indispensable" to chicken processing. We find further support for this conclusion in the Supreme Court's recent dis-cussion of a closely related issue. In *Alvarez*, the Court held that post-donning and pre-doffing time spent walking between the locker room and the production line in a food processing plant was compensable, because under the "continuous work-day" rule, the compensable workday includes all activities that occur "after the beginning of the employee's first princi-

pal activity and before the end of the employee's last principal activity." 546 U.S. at 30, 37. Based on this holding, the Court necessarily accepted the conclusion of the courts below that the donning and doffing in that case was "integral and indispensable" to the principal activity of food processing. *See id.* at 32. The Court clarified that donning and doffing began and ended the continuous workday because "any activity that is 'integral and indispensable' to a 'principal activity' is itself a 'principal activity.'" *Id.*

Although the parties in *Alvarez* did not challenge on appeal the conclusion that donning and doffing protective gear was integral and indispensable to the principal activity of poultry processing, it would be illogical to conclude that the Supreme Court would have held the walking time to be compensable if it entertained serious doubts regarding the compensability of the donning and doffing activities themselves. Accordingly, in our view, it is manifest that the employees' acts of donning and doffing are principal activities that mark the beginning and the end of the workday. Under the continuous workday rule, therefore, the employees are entitled to compensation for those activities and any other activities, such as sanitizing and walking, which occur between the first and last principal activities. *See id.* at 28.

Mountaire argues, nevertheless, that once it changed its company policy to allow employees to take home their smocks, the donning and doffing activities at the beginning and the end of each work shift no longer were compensable as "work." In support of its argument, Mountaire relies on a memorandum issued by the Secretary of Labor which, in effect, stated that donning and doffing is not compensable if employees have "the option and the ability to change into the required gear at home." *See* DOL Wage & Hour Adv. Mem. No. 2006-2 (May 31, 2006); *see also Bamonte v. City of Mesa*, 598 F.3d 1217, 1227-31 (9th Cir. 2010).

Under the facts of the present case, however, Mountaire's change in company policy does not alter our conclusion. Even

if we assume, without deciding, that the Secretary's position on this issue has merit, the district court found that Mountaire's "take home" policy was "illusory." *Perez*, 610 F. Supp. 2d at 519-20. According to the district court, even after the "take home" policy changed, many employees continued to leave their smocks at the plant. The district court concluded that it was "illogical," "onerous," and "impractical" for employees to take their smocks home, because Mountaire provides hampers for dirty smocks and provides clean smocks free of charge.

This factual record supports the district court's conclusion that the employees do not have a meaningful option to don and doff their protective gear at home. Moreover, the nature of the employees' jobs, including the need for strict compliance with sanitation measures, necessitates that the employees don and doff their gear at their workplace. We therefore conclude that the employees' acts of donning and doffing at the beginning and end of their work shifts are compensable as "work," despite Mountaire's stated policy allowing its employees to don and doff certain protective equipment at home.

## B.  *Mid-Shift Donning and Doffing*

We next address the issue whether the employees' acts of donning and doffing at their meal break are compensable as "work" under the FLSA. As an initial matter, we disagree with Mountaire's argument that our holding in *Roy v. County of Lexington*, 141 F.3d 533 (4th Cir. 1998), requires us to focus our analysis on the unpaid meal break as a whole, rather than on the time the employees spend donning and doffing their protective gear. Our decision in *Roy* does not counsel such a result.

In *Roy*, certain emergency medical service personnel requested compensation for their entire meal break, because they were required to be "on call" to respond to emergencies

during the entire break. 141 F.3d at 544. In conducting an analysis of the entire meal break, this Court denied the claim for compensation, concluding that the meal period, as a whole, predominately benefitted the employees. *Id.* at 545.

In the present case, however, the employees do not seek compensation for their entire meal break. Rather, the employees seek compensation only for the time periods in which the acts of donning and doffing occur, activities that they allege occur before and after their "bona fide meal period." Therefore, we are not confronted here with an issue whether the entire meal period predominately benefits the employer, but instead decide whether the time periods during which these activities occur, and for which compensation is sought, predominately benefit the employer. *See id.*

The district court found that the employees' acts of donning and doffing at the meal break benefit Mountaire by helping to "limit [Mountaire's] products' exposure to bacteria and ensure that products are uncontaminated and clean." *Perez*, 610 F. Supp. 2d at 521. Although the district court acknowledged that the employees also benefit from being able to eat "without blood and other chicken products on their persons," the district court found that the benefit to Mountaire outweighs the benefit to the employees. *Id.*

These factual findings are well-supported by the present record and, therefore, should be applied in the resolution of this appeal. *See Universal Furniture*, 618 F.3d at 427. If we were writing on a clean slate, we would hold that based on the district court's factual findings, these activities are not part of the "bona fide meal period" but are compensable as "work" under the continuous workday rule.[7] *See Alvarez*, 546 U.S. at 29; *Roy*, 141 F.3d at 545.

---

[7]Mountaire also maintained at oral argument that donning and doffing at the meal break is not compensable on the additional ground that the employees "don't have to eat." We find no merit in this argument because, apart from its fatuous aspect, the argument ignores the fact that Mountaire is required by state law to provide a meal break to an employee if the employee works 7.5 or more consecutive hours. *See* 19 Del. Code § 707(a).

We are bound, however, by circuit precedent. In *Sepulveda*, this Court held, as a matter of law, that acts of donning and doffing occurring before and after employees eat their meals are non-compensable because these acts are part of the "bona fide meal period." 591 F.3d at 216. Alternatively, this Court concluded that the time spent by employees conducting such activities was non-compensable on the ground that the time was de minimis.[8] *Id.* The full text of the Court's discussion of this issue in *Sepulveda* was as follows:

> Lastly, the employees seek compensation for the time they spend during their lunch breaks donning and doffing a few items, washing, and walking to and from the cafeteria. This time is non-compensable, however, because it is part of a bona fide meal period, *see* 29 C.F.R. § 785.19 ("Bona fide meal periods are not worktime."), and, in the alternative, de minimis. *See Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692 (1946) ("When the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded.").

*Id.*

In resolving this issue as a matter of law, the Court in *Sepulveda* appears to have departed from our holding in *Roy*, which instructs that the issue whether employees are entitled to receive compensation as a result of particular activities performed incident to a meal break presents "a question of fact to be resolved by appropriate findings of the trial court." *Roy*, 141 F.3d at 545 (quoting *Skidmore v. Swift*, 323 U.S. 134,

---

[8]Because the issue of compensation for donning and doffing in *Sepulveda* was limited to the meal break and did not include the question of compensation for donning and doffing at the beginning and the end of the employees' work shifts, this Court's de minimis analysis in that case also applied only to these activities taking place at the meal break. *Id.*

136-37 (1944)). In *Skidmore*, the Supreme Court specifically advised against "lay[ing] down a legal formula to resolve [FLSA] cases so varied in their facts."[9] 323 U.S. at 136. Thus, we conclude that the decision in *Roy* requires the "predominant benefit" factual analysis that the district court conducted in the present case.[10]

Nevertheless, because the activities in *Sepulveda* involved meal break donning and doffing at a poultry processing plant, and the character of those activities cannot be distinguished substantively from the activities at issue here, we are required to follow this Court's holding resolving that issue. *See United States v. Prince-Oyibo*, 320 F.3d 494, 501 (4th Cir. 2003). Accordingly, we conclude that the employees are not entitled to compensation for the time spent donning and doffing protective gear incident to the meal period.[11] *Sepulveda*, 591 F.3d at 216.

---

[9]Additionally, the language of 29 C.F.R. § 785.19, cited in *Sepulveda* to support its conclusion that meal break donning and doffing is non-compensable, suggests that such a finding would be factual as opposed to legal in nature.

[10]The decision in *Sepulveda* appears to have assumed, without regard to the nature and duration of the activities performed, that the donning and doffing activities were part of a "bona fide meal period" simply because they occurred immediately before and after the employees ate their mid-shift meal. The determination of entitlement to compensation under the FLSA, however, is necessarily factual in nature because the outcome depends on the particular activities involved and the amount of time required for their performance. *See Roy*, 141 F.3d at 545. Resolving the issue of compensation for donning and doffing at a meal break as a matter of law effectively eliminates a court's consideration of facts that are usually unique to a given case, thereby impairing the ability of employees to receive compensation for the performance of activities that predominantly benefit the employer.

[11]Because we are bound by the primary holding in *Sepulveda*, we do not discuss its alternative holding that the time the employees spent donning and doffing at the meal break was "de minimus." We note only that the record in *Sepulveda* does not contain any facts regarding the time expended in the performance of these activities.

## C.  *Calculation of Compensable Time*

Having determined that the time the employees spend donning and doffing at the beginning and the end of the work shifts is compensable, we turn to consider the amount of time that employees spend completing these activities. In order to calculate the time that the employees spend donning and doffing, the district court considered the expert testimony of Dr. Davis and Dr. Radwin.

According to Mountaire, the district court erred in rejecting the results of Dr. Davis's study and largely accepting Dr. Radwin's conclusions regarding the calculation of compensable time. We find no merit in Mountaire's argument. The district court clearly stated its reasons for rejecting Dr. Davis's study results. The district court found that Dr. Davis's study was an "academic . . . exercise" that did not reflect the employees' normal donning and doffing process. *Perez*, 610 F. Supp. 2d at 512. The district court also observed that Dr. Davis did not randomly select the participants for his study, but permitted Mountaire supervisors to choose the participants and to exclude any members of the plaintiff class. Of additional concern to the district court, Dr. Davis's study did not take into account "the realities of the employees' work" because it was conducted in a conference room where all the required gear was provided to the employees on a table. *Id.* Based on these findings, we conclude that the district court did not abuse its discretion in refusing to rely on the results of Dr. Davis's study.

In contrast, the district court described Dr. Radwin's study as a "practical real-time evaluation of the donning and doffing process." *Id.* Dr. Radwin's study considered the time that employees spent walking in congested hallways and to various locations to obtain the protective gear. The district court found that the study participants were randomly selected and were recorded on videotape under actual working conditions.

The district court therefore relied on the results of Dr. Radwin's study to calculate the compensable time.

Mountaire raises two objections concerning Dr. Radwin's study. First, Mountaire asserts that Dr. Radwin erred in beginning his measurement of the donning process when the employees acquired their first piece of equipment, and in ending his measurements when the employees released their last piece of equipment. According to Mountaire, Dr. Radwin should not have included in his measurements the time period between the employees' acquisition of the gear and their donning of the gear, and the time period between their doffing and their release of the last piece of gear.

The First Circuit addressed this issue in *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 283 (1st Cir. 2004), *rev'd on other grounds*, *IBP, Inc. v. Alvarez*, 546 U.S. 21 (2005). There, the court approved jury instructions defining the donning process as including the employees' acts in obtaining the gear, and the doffing process as including the time necessary to place the gear in a designated bin or locker. *Id.* at 282-83. We further observe that the First Circuit's holding on this issue in *Tum* is consistent with the position of the Secretary of Labor.[12] *See* DOL Wage & Adv. Mem. No. 2006-2 n.1 (May 31, 2006).

We conclude that the First Circuit's holding and the Secretary's position are persuasive here, because Mountaire controlled the location of the employees' donning and doffing at the plant, and these acts are necessary to the employees' ability to do their jobs. The employees obtained various pieces of gear at different locations selected by Mountaire. Mountaire provided clean smocks on racks located in congested hallways, and the employees stored their other protective gear in lockers provided by the company. Employees donned their

---

[12]Although we are not bound by the Secretary's memorandum, we conclude that the memorandum is entitled to deference in accordance with the principles stated in *Skidmore*. 323 U.S. at 139-40.

gear beside their lockers, in bathrooms, in the production area, or in the busy hallways as they walked to their workstations. Because of these conditions, the employees were not always able to don their protective gear as soon as they obtained their smocks.

At the end of the work shift, the employees doffed their gear at various designated locations within the plant and placed most of their protective gear in their lockers. The employees deposited their soiled smocks in hampers that Mountaire placed in the hallways. We conclude that, based on these facts, the district court properly found that the time spent by the employees after acquiring their protective gear but before donning it, and after doffing the gear until fully discarding it, is compensable.

Mountaire raises a separate argument, however, concerning Dr. Radwin's method of calculating the time expended by the employees. According to Mountaire, Dr. Radwin improperly calculated the total compensable time by adding the mean times of each activity. Mountaire asserts that compensable time instead should have been calculated by adding together the minimum amounts of time expended by the best-performing employee in completing each activity. We find no merit in this argument because such a method of calculation would not account for the fact that workers of different ages and states of well-being, with varying degrees of agility, are engaged in the performance of these activities. Thus, a calculation based on the summation of mean times provides a more accurate representation of the amount of time that employees working at the plant actually spend donning and doffing. We therefore conclude that the district court did not err in relying on the mean times provided by Dr. Radwin, and we now proceed to calculate the compensable time based on the results of Dr. Radwin's study.

Based on the district court's rationale, after adjusting for "outliers," the total compensable time for donning and doffing

was seventeen minutes.[13] From this period of seventeen minutes, we must exclude the amount of time required for mealtime donning and doffing that the employees are precluded from recovering by our decision in *Sepulveda*. According to Dr. Radwin's study, the mean time for mealtime donning and doffing is 6.796 minutes. Therefore, the total time spent donning and doffing at the beginning and end of the workday equals 10.204 minutes.

## D.   *"De Minimis" Issue*

We now consider Mountaire's claim that the time expended by the employees in donning and doffing at the beginning and the end of their work shifts is de minimis and therefore noncompensable, notwithstanding our holding that these activities are part of the continuous workday as acts "integral and indispensable" to Mountaire's principal activity. As the Supreme Court has explained, the de minimis rule precludes employees from recovering for compensable work "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours." *Anderson*, 328 U.S. at 692. According to the Court, compensation for "[s]plit-second absurdities" is not justified by the policy of the FLSA. *Id.*

In applying the de minimis rule, we consider the aggregate amount of time for which the employees are otherwise legally entitled to compensation. *See* DOL Wage & Adv. Mem. No. 2006-2 n.1 (May 31, 2006). We do not, as Mountaire suggests, evaluate each task or group of tasks separately to determine if the time period is de minimis. Adopting Mountaire's

---

[13]Dr. Radwin concluded that the mean donning and doffing time equaled 20.879 minutes. The district court found that this calculation was a "slight overestimation" and concluded that the correct calculation was 17 minutes. Because Mountaire failed to challenge the method of the district court's recalculation in its opening brief, Mountaire has waived any argument concerning the district court's adjustment of Dr. Radwin's calculations. *See* Fed. R. App. P. 28(a)(9)(A); *Yousefi v. I.N.S.*, 260 F.3d 318, 326 (4th Cir. 2001) (per curiam).

approach would undermine the purpose of the FLSA by allowing employers to parcel work into small groups of tasks that, when viewed separately, always would be considered de minimis. Therefore, we reject Mountaire's approach and consider whether the aggregate amount of time spent donning and doffing each day at the beginning and the end of the work shifts, a total of 10.204 minutes, is de minimis.

Mountaire argues, however, that 10.204 minutes is de minimis as a matter of law. In support of its argument, Mountaire relies on this Court's holding in *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187 (4th Cir. 1949). According to Mountaire, this Court adopted "a ten-minute rule" in *Green* establishing that otherwise compensable activities are rendered non-compensable when those activities do not exceed a total of ten minutes per day.

We disagree that this Court has established such a "ten-minute rule." In *Green*, the employees argued that they were required to be present at their work station ten minutes before the start of their work shifts and, therefore, were entitled to compensation for that ten-minute period each day. 177 F.3d at 188. This Court summarily rejected the employees' claim on the basis that the employees were not actually required to be present for ten minutes before starting work, but merely were admonished by the employer to arrive at their work stations soon enough to be able to start work on time. *Id.* Therefore, this Court concluded that the employees could not be compensated additionally under the FLSA for any extra time they spent at the work site to ensure that they would be able to start their work shifts on time. *Id.* After stating this holding, this Court observed that the ten-minute interval at issue was de minimis. *Id.* This additional observation was not necessary to the Court's resolution of the factual issue that was the basis of its holding, and we therefore conclude that the observation is merely dicta.

Because the decision in *Green* does not control the present issue, we must address whether the donning and doffing time period of 10.204 minutes per day is de minimis and, therefore, non-compensable under the holding of *Anderson*. 328 U.S. at 692. To date, we have not articulated factors to be considered in determining whether a particular time period is de minimis. However, the Ninth Circuit, in *Lindow v. United States*, 738 F.2d 1057, 1062-63 (9th Cir. 1984), in a holding adopted by three of our sister circuits, articulated three factors to consider when conducting a de minimis analysis: (1) the practical difficulty the employer would encounter in recording the additional time; (2) the total amount of compensable time; and (3) the regularity of the additional work. *See also De Asencio v. Tyson Foods, Inc.*, 500 F.3d 361, 374 (3d Cir. 2007); *Brock v. City of Cincinnati*, 236 F.3d 793, 804-05 (6th Cir. 2001); *Kosakow v. New Rochelle Radiology Assocs., P.C.*, 274 F.3d 706, 719 (2d Cir. 2001). We conclude that these factors set forth in *Lindow* provide a useful and practical basis on which to conduct this type of analysis. By applying these factors, we adopt a de minimis analysis that necessarily requires a factual inquiry that will change on a case-by-case basis.[14] *See Lindow*, 738 F.2d at 1062.

With regard to the first factor, we observe that both experts in the present case were able to measure the amount of time required by employees to don and doff protective gear before and after their work shifts. Thus, the time expended in these activities is not so miniscule that it would be difficult to measure as a practical matter. *See id.* at 1062-63; *see also* 29 C.F.R. § 785.47.

---

[14]We observe that our alternative holding in *Sepulveda*, concluding that the time spent donning and doffing at the meal break was de minimis, does not assist our analysis here. The Court did not state in its opinion in *Sepulveda* the amount of time required for those activities of donning and doffing. Thus, in the absence of any stated factual basis for the Court's conclusion that the time involved was de minimis, we are unable to apply that finding to the present time period of 10.204 minutes.

Second, we consider the aggregate amount of compensable time involved. There are 280 employees who "opted into" the Millsboro action. Each of these employees was being paid at a rate of ten dollars per hour, and each would be entitled to compensation for 10.204 minutes of work per day. Applying these figures to an annual work schedule of fifty weeks, the amount of compensable time per employee is about 42.5 hours per year, which amounts to compensation of about $425 per employee per year. We conclude that this annual amount per employee is significant for an employee earning ten dollars per hour, because that annual amount represents a full week's wages.

Additionally, the employees currently seek compensation for a period of more than six years, due in part to the passage of time since the filing of their complaint.[15] Therefore, over the six year period at issue here, each employee is entitled to additional compensation of about $2,550. We conclude that this aggregate amount per employee also is significant.

With regard to the third factor, the regularity of the additional work, it is undisputed that these activities of donning and doffing at the beginning and the end of the employees' work shifts occur regularly each workday. Therefore, based on the three factors that we have adopted from *Lindow*, we conclude that the compensable time at the beginning and the end of the employees' work shifts is not de minimis and, thus, is compensable under the FLSA.

Mountaire argues, nevertheless, that it should not be required to compensate the employees for the time spent donning and doffing their protective gear at the beginning and

[15]As we hold later in this opinion, the district court correctly determined that a two-year statute of limitations applied to the employees' claims. Therefore, the six-year period for which compensation is due reflects that limitations period plus the passage of time since the employees filed their complaint.

the end of the work shifts, because any calculation of such time would impose unreasonable and substantial administrative difficulties on Mountaire. In that regard, Mountaire asserts that such a calculation of time would be cost-prohibitive, cumbersome, and inefficient. Mountaire asks that we also consider the practical consequences of this type of requirement, including that employers will be compelled to "micro-manage" the amount of time employees spend donning and doffing to ensure that the employees are not wasting time during these activities.

In our opinion, Mountaire overstates the extent of administrative difficulties involved in the calculation of the time required for donning and doffing at the beginning and the end of employees' work shifts. Mountaire already has a time-keeping system that could be modified to include the time that the employees spend performing these activities. We further observe that Mountaire is free to set policies restricting the employees' nonessential conduct during the donning and doffing process. Thus, we conclude that Mountaire's arguments are unpersuasive, and we hold that the employees are entitled to compensation for 10.204 minutes per work shift for the time that they spend donning and doffing their protective gear at the beginning and the end of their work shifts.

V.

A.

The employees argue on cross-appeal that the district court erred in concluding that Mountaire's FLSA violations were not "willful." Under the Portal Act, a finding of "willful" violations subjects an employer to a three-year, rather than a two-year, statute of limitations for "back pay" liability. 29 U.S.C. § 255(a).

To establish willfulness, the employees had the burden to show that the employer "knew or showed reckless disregard

for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richmond Shoe Co.*, 486 U.S. 128, 133 (1988). We review the district court's finding of a lack of willfulness for clear error. *Martin v. Deiriggi*, 985 F.2d 129, 136 (4th Cir. 1992).

As we have explained, prior to the present case, this Court had not addressed the issue whether employees' acts of donning and doffing protective gear at the beginning and the end of their work shifts are "integral and indispensable" to poultry processing, and our sister circuits have taken different approaches to this issue. *Compare Alvarez*, 339 F.3d at 902-03 *with Gorman*, 488 F.3d at 594. Because there was no binding authority directly addressing the issue of compensation for the donning and doffing of protective gear at the beginning and the end of work shifts, we hold that the district court did not clearly err in concluding that Mountaire did not willfully violate the FLSA by failing to compensate its employees for these activities. Therefore, absent such a finding of "willfulness," we conclude that the two-year statute of limitation applies. *See* 29 U.S.C. § 255(a).

## B.

The employees also seek to recover liquidated damages. We review the district court's decision denying liquidated damages for abuse of discretion. *Roy*, 141 F.3d at 548.

The FLSA provides for mandatory liquidated damages in an amount equal to the unpaid overtime compensation. 29 U.S.C. § 216(b). Under the Portal Act, however, a district court, in its sound discretion, may refuse to award liquidated damages if "the employer shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA]." 29 U.S.C. § 260. The employer bears the burden of proof in

establishing this defense. *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1118 (4th Cir. 1985).

In this case, we credit the district court's finding that Mountaire's acts were not "willful" as evidence of Mountaire's good faith. *See Roy*, 141 F.3d at 548. Mountaire also produced evidence of its good faith by showing that the company relied on the advice of David Wylie, an attorney retained by the National Chicken Council. *See id.* Mountaire presented to the district court fourteen letters and memoranda from Wylie in which he interpreted donning and doffing cases from various jurisdictions, provided updates on plant surveys conducted by the Department of Labor, and advised poultry companies on how the companies could alter or maintain their practices to remain in compliance with the FLSA, as interpreted by different courts. The district court found that Mountaire "clearly" changed its policies based on Wylie's information and advice.

We conclude that the district court did not clearly err in finding that Mountaire acted in good faith by attempting to follow the advice of Wylie. Although Wylie did not specifically advise Mountaire as its legal counsel, but provided the advice on behalf of a private interest group, the information was nonetheless relevant to Mountaire's policy concerns and was not overtly suspect in its conclusions. Therefore, we affirm the district court's denial of liquidated damages.

## VI.

In conclusion, we affirm the district court's judgment on the FLSA claims relating to donning and doffing activities at the beginning and the end of the employees' work shifts, and vacate the district court's judgment regarding the mid-shift donning and doffing claims. We also affirm the district court's decision applying a two-year statute of limitations and denying the employees' request for liquidated damages.

*AFFIRMED IN PART, VACATED IN PART*

WILKINSON, Circuit Judge, concurring in part and concurring in the judgment:

I am happy to concur in substantial part in Judge Keenan's thoughtful opinion. It does a fine job explaining why donning and doffing at the beginning and end of the workday is compensable. The court rightly notes that this case presents a different question than *Sepulveda v. Allen Family Foods, Inc.*, 591 F.3d 209 (4th Cir. 2009). There, we addressed whether donning and doffing personal protective gear was "changing clothes" for purposes of 29 U.S.C. § 203(o), but that provision applies exclusively to the collective bargaining context. *Sepulveda* expressly reserved the question of whether donning and doffing protective equipment outside of the collective bargaining context is compensable, *id.* at 214, and I agree for the most part that it is.

With respect to lunch-break doffing and donning (sections IV.B and D), I write simply to note that the Fair Labor Standards Act does not require that every controversy over ever-smaller increments of time be litigated out to three decimal places. The de minimis rule in place at the Supreme Court and the circuits imposes some outer limits on this process, and I believe that requiring compensation of lunchtime doffing and donning would exceed those limits here.

I.

The de minimis doctrine is not in some embryonic state. Were this a matter of first impression, I would have some hesitation in saying that a de minimis exception qualifies the Fair Labor Standards Act. The rule has no obvious statutory derivation, and it would be preferable for Congress rather than the courts to supply its content. For many decades, however, Congress has declined to address the de minimis doctrine and has

left the courts to develop it essentially as a matter of federal common law.

Thus we find ourselves bound by a doctrine whose origins we are not free to question. The Supreme Court and numerous circuits have adopted the de minimis rule, and I believe a respect for higher authority and the broad consensus of our sister circuits obliges us to afford that rule some meaningful content.

The FLSA de minimis doctrine first appeared in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946). In that case, the Supreme Court addressed the compensability of the everyday activity of walking to a workstation after punching a time card. Though the employer paid only for line time, employees could clock in up to fourteen minutes before their shift began in order to leave sufficient time for walking. *Id.* at 683. The Court concluded that the compensable working time presumptively included "the minimum time necessarily spent in walking at an ordinary rate along the most direct route from time clock to work bench." *Id.* at 692. Such walking time was estimated at anywhere from 30 seconds to eight minutes. *Id.* at 683.

The Supreme Court recognized, however, that compensable time "must be computed in light of the realities of the industrial world." *Id.* at 692. As a result, "[w]hen the matter in issue concerns only a few seconds or minutes of work beyond the scheduled working hours, such trifles may be disregarded." *Id.* The Court ultimately concluded that the "*de minimis* rule can doubtless be applied to much of the walking time." *Id.* It also noted that the de minimis doctrine would apply to activities that took place at the work bench, including "putting on aprons and overalls, removing shirts, taping or greasing arms, putting on finger cots, preparing the equipment for productive work, turning on switches for lights and machinery, opening windows and assembling and sharpening tools." *Id.* at 692-93. While the Portal-to-Portal Act of 1947 eventually superseded

*Anderson*'s holding that walking on the employer's premises and other preliminary and postliminary activities were compensable, *see* 29 U.S.C. § 254(a), it left undisturbed *Anderson*'s holding that de minimis periods of work are non-compensable.

The circuit courts have not hesitated to apply the holding of *Anderson* to other cases involving small amounts of worktime. *See, e.g.*, *Rutti v. Lojack Corp.*, 596 F.3d 1046, 1057-58 (9th Cir. 2010) (filling out minimal paperwork at home de minimis); *Singh v. City of New York*, 524 F.3d 361, 371-72 (2d Cir. 2008) (additional commuting time due to carrying briefcase de minimis); *Alvarez v. IBP, Inc.*, 339 F.3d 894, 903-04 (9th Cir. 2003) (donning and doffing of hardhats and safety goggles de minimis); *Reich v. IBP, Inc.*, 38 F.3d 1123, 1126 n.1 (10th Cir. 1994) (same); *Aiken v. City of Memphis*, 190 F.3d 753, 758 (6th Cir. 1999) (dog-care duties during handlers' commute de minimis); *Bobo v. United States*, 136 F.3d 1465, 1468 (Fed. Cir. 1998) (same); *Reich v. New York City Transit Auth.*, 45 F.3d 646, 652-53 (2d Cir. 1995) (same); *Lindow v. United States*, 738 F.2d 1057, 1063-64 (9th Cir. 1984) (reviewing log book and clarifying log entries de minimis); *E.I. du Pont De Nemours & Co. v. Harrup*, 227 F.2d 133, 136 (4th Cir. 1955) (counting cash before start of cashier shift de minimis); *Frank v. Wilson & Co.*, 172 F.2d 712, 716 (7th Cir. 1949) (clocking in, receiving instructions from supervisors, obtaining tools, and walking to work station all de minimis). Following the lead of *Anderson*, many of these de minimis periods involved regular, daily occurrences. *See, e.g.*, *Alvarez*, 339 F.3d at 903-04; *Reich v. IBP, Inc.*, 38 F.3d at 1126 n.1.

Given the presence of this standard, and its widespread adoption, it is obvious that we must strike "a balance between requiring an employer to pay for activities it requires of its employees and the need to avoid 'split-second absurdities' that 'are not justified by the actuality of the working conditions.'" *Rutti*, 596 F.3d at 1057 (quoting *Lindow*, 738 F.2d at

1062). On the one hand, to give the de minimis rule too broad a reach would contradict congressional intent by denying proper effect to a statute that is "remedial and humanitarian in purpose." *Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597 (1944). Congress obviously desired in the FLSA to protect those whose lives and families depend upon a decent wage, *see* 29 U.S.C. § 202(a), and we have recognized this case as one where the humanitarian purpose of the FLSA must be accorded effect. The jobs performed by the poultry workers in this case are indisputably important. However, jobs performed in poultry plant production lines can also be tough, repetitive, and difficult, and the workers here are undeniably within the core class of employees whose "health, efficiency, and general well-being" the FLSA was intended to protect. *Id.* For these reasons, I am happy to join the court in concluding that donning and doffing at the beginning and end of the workday is not de minimis.[1]

## II.

On the other hand, we cannot just toss the de minimis rule aside. Presumably, the Supreme Court recognized the role of the de minimis doctrine in FLSA cases for a reason. In *Anderson*, the Court acknowledged that a de minimis rule is necessary because "[t]he workweek contemplated by [the FLSA] must be computed in light of the realities of the industrial world," and those "realities of the industrial world" must include the commonsense observation that the computations of ever smaller increments of time may eventually become so onerous that they should not be the subject of endless litigation. 328 U.S. at 692. At least I can think of no reason for a

---

[1] My good colleagues assert that this Court's observation in *Green v. Planters Nut & Chocolate Co.*, 177 F.2d 187 (4th Cir. 1949), that a ten-minute period of uncompensated work was de minimis "is merely dicta." *Majority Op.* at 45. But because the 10.204 minutes of donning and doffing at the beginning and end of the workday in this case falls outside any such "ten-minute rule", *Green* is simply inapposite. There is no need to address its precedential force, lest we use dicta to overrule asserted dicta.

de minimis rule other than preventing companies from being saddled with ceaselessly litigable computations over just "a few seconds or minutes."

This case illustrates the litigation difficulties that the de minimis rule was meant to forestall. In order to resolve a dispute over donning and doffing activities that each take but a few minutes, the parties were required to hire dueling experts accompanied by teams of assistants who collectively studied almost 400 employees. While it is true that "both experts in the present case were able to measure the amount of time required by employees to don and doff protective gear," *Majority Op.* at 46, the experts often felt it necessary to carry their computations out to no fewer than three decimal places. Indeed, one expert's analysis required him to scroll frame-by-frame through videos of donning and doffing employees in order to measure their times to within 1/30 of a second. *Perez v. Mountaire Farms, Inc.*, 610 F. Supp. 2d 499, 507 (D. Md. 2009). Thus the time expended in these activities does present computational problems as a practical matter. For despite measurement precision fit for an Olympic race, the dueling experts came to staggeringly different conclusions. It hardly seems necessary to state that this sort of dispute serves as a veritable invitation to extensive litigation.

Absent some de minimis rule, no company could fairly predict its liability for the smallest fragments of time without the aid of legal counsel, and even then, the presence of factually uncertain litigation outcomes leaves employers unclear as to the magnitude of their potential liability. For in cases such as this one, there seems little practical possibility of consensus between the parties regarding how much time should be compensated. Here, for example, a large gulf lay between the two experts' calculations: whereas the plaintiffs' expert found that donning and doffing throughout the day took an average of 20.879 minutes, *id.* at 509, Mountaire's expert concluded that those activities required only 10.2 minutes, *id.* at 512.

In our adversary system, calculations such as these are unlikely ever to be a cut-and-dried matter. Of course courts can always step in to resolve the gritty details relevant to the proper computation in any particular case. *See, e.g.*, *Alvarez v. IBP, Inc.*, 339 F.3d 894, 906 (9th Cir. 2003), *aff'd*, 546 U.S. 21 (2005) (post-donning walking time compensable); *id.* (pre-doffing walking time compensable); *Tum v. Barber Foods, Inc.*, 360 F.3d 274, 281-82 (1st Cir. 2004), *rev'd on other grounds*, *Alvarez*, 546 U.S. at 41-42 (pre-donning waiting time not compensable); *Majority Op.* at 43 ("time spent by the employees after acquiring their protective gear but before donning it, and after doffing the gear until fully discarding it, is compensable"); *Tum*, 360 F.3d at 283 (same); *Majority Op.* at 43 (mean rather than minimum donning and doffing time compensable); *Musch v. Domtar Indus., Inc.*, 587 F.3d 857, 860-61 (7th Cir. 2009) (post-shift showering not compensable); *Gorman v. Consol. Edison Corp.*, 488 F.3d 586, 593 (2d Cir. 2007) (security procedures before entering workplace not compensable); *Bonilla v. Baker Concrete Constr., Inc.*, 487 F.3d 1340, 1344-45 (11th Cir. 2007) (same). But these persistent problems of measurement and demarcation mimic the heads of the Hydra: cut down one, and two spring up in its stead. There is simply no quantum of judicial or agency guidance that can convey to companies precisely what small activities are compensable and how many minutes and fractional seconds should be allotted to them. If the Supreme Court is prepared to jettison the de minimis doctrine, that is fine. But so long as it exists, there must be some outer limits on the sort of granular metrics that have characterized this kind of litigation.

III.

In this case, the lunchtime doffing and donning falls on the de minimis side of those limits. The substantial differences between donning and doffing at the beginning and end of the day on the one hand and doffing and donning at lunch on the other hand support this conclusion. First of all, the amount of

time involved in lunchtime doffing and donning is relatively minor. The plaintiffs' expert, on whose study the district court based its findings, found that doffing at the start of the lunch break required an average of only 2.571 minutes, and post-lunch donning only 4.225 minutes. *Perez*, 610 F. Supp. 2d at 509. Both are less than half of the time the plaintiffs' expert found necessary for doffing and donning at the end and beginning of the day, respectively. *Id.* While this to be sure is a difference of degree, the de minimis doctrine necessarily contemplates that such significant differences as this may preclude compensation, for if matters of degree were never significant, there would be no de minimis rule at all.

But even those small figures likely overstate the actual amount of time involved. Although the plaintiffs' expert concluded that the total donning and doffing time throughout the day was 20.879 minutes, the district court found that figure "to be a slight overestimation of the total time" and reduced it to 17 minutes. *Id.* at 524. If the reduction that the district court applied to the total time collectively applied proportionately to lunchtime doffing and donning individually—and the district court gave no indication why it should not—then these lunchtime activities would occupy only 2.093 and 3.440 minutes, respectively, for a total of less than six minutes.

It is true that even such small increments of time can be aggregated over time to produce an impressive-sounding number. But the mere fact of multiplication cannot be used to scrap the de minimis rule altogether. For like the lunchtime doffing and donning in this case, other daily periods of work have been found de minimis, *see, e.g.*, *Anderson*, 328 U.S. at 692-93 (walking to work bench and pre-shift preparations de minimis); *Alvarez*, 339 F.3d at 903-04 (donning and doffing of hardhats and safety goggles de minimis); *Reich v. IBP, Inc.*, 38 F.3d at 1126 n.1 (same), and there is no number so small that a suitable multiplier cannot make large.

Lunchtime doffing and donning also differs from its beginning- and end-of-day counterpart because the former is incident to a bona fide meal period, which is specifically exempted from compensation by a regulation that itself breaks up the continuous workday. *See* 29 C.F.R. § 785.19 ("Bona fide meal periods are not worktime."). Given the combination of brevity and the bracketing of a non-compensable meal break, doffing and donning time before and after lunch cannot be of compensable character.[2] Striking the balance in this way has the advantages of following the standards laid down by the Supreme Court, of respecting our own circuit precedent, and of recognizing that in this difficult doctrinal area, the arguments put forth by the employees and Mountaire each have their points of merit.

## IV.

I admit to some discomfort applying any sort of balancing act where the Fair Labor Standards Act does not appear to provide one. However, I believe that the de minimis standard articulated by the Supreme Court in *Anderson* requires it. And if one is to undertake in this case the sort of de minimis inquiry mandated by *Anderson* and the decisions of our own and sister circuits, it cannot lead to some stark all-or-nothing disposition in favor of either management or labor.

---

[2]*Sepulveda* did not dispute that employees' entitlement to compensation under the FLSA is frequently a factual issue, *see Roy v. County of Lexington*, 141 F.3d 533, 545 (4th Cir. 1998), but instead recognized that in the circumstances of the *Sepulveda* case, judgment as a matter of law was appropriate. 591 F.3d at 217 n.4; *see also Alvarez*, 339 F.3d at 903 ("The time it takes to [don and doff] non-unique protective gear is *de minimis* as a matter of law."); *Reich v. IBP, Inc.*, 38 F.3d at 1126 n.1 ("the time spent putting on and taking off [non-unique gear] is *de minimis* as a matter of law"). This is not inconsistent with *Roy*, for the fact that some issues are tried under Fed. R. Civ. P. 52 does not render Fed. R. Civ. P. 56 universally inapplicable. *Roy* did not even involve application of the de minimis doctrine, the very point at issue here.

The best way to recognize that fact is indeed the way the majority has recognized it—to credit on the one hand the donning and doffing at the beginning and end of the workday, and on the other hand to avoid making the lesser lunch-break doffing and donning a matter of perpetual litigation. I concede that my approach herein provides no cleaner analytical line than does the loose three-factor *Lindow* formulation. The caselaw in this area is itself a mush, albeit one that redeemably recognizes the need to compensate workers fairly for work performed without driving companies crazy with microscopic litigation. Once in a good while outcomes that are analytically impure may be eminently just. The de minimis doctrine requires the courts to travel that road, and I believe that my distinguished colleagues and I have reached, through perhaps distinctive routes, the proper destination.